**B–K LIGHTING, INC., a California corporation, Plaintiff,**

v.

**VISION3 LIGHTING, a business entity of unknown form, and Fresno Valves & Castings, Inc., a California Corporation, Defendants.**

**Case No. CV 06–02825 MMM (PLAx).**

United States District Court,
C.D. California.

March 11, 2013.

Brian Jason Philpott, Jaye G. Heybl, Koppel Patrick Heybl and Philpott, K. Andrew Kent, Rincon Venture Law Group, Westlake Village, CA, Steven E. Shapiro, Kim Shapiro Park and Lee, Los Angeles, CA, for Plaintiff.

**ORDER RE: B–K LIGHTING'S MOTION FOR SUMMARY JUDGMENT OF VALIDITY AND FRESNO VALVES' MOTION FOR SUMMARY JUDGMENT OF INVALIDITY; FRESNO VALVES' MOTION FOR SUMMARY JUDGMENT OF NO INFRINGEMENT**

MARGARET M. MORROW, District Judge.

This is a patent dispute between B–K Lighting, Inc. ("B–K") and Fresno Valves & Castings, Inc. ("FVC"). On May 23, 2008, the court granted FVC's motion for summary judgment of invalidity, finding the patent-in-suit invalid on grounds of obviousness.[1] B–K appealed.[2] The Court of Appeals for the Federal Circuit affirmed

---

1. Order Granting Fresno Valves' Motion for Summary Judgment of Invalidity on Grounds of Obviousness ("MSJ Order"), Docket No. 235 (May 23, 2008).

2. Notice of Appeal to the Federal Circuit, Docket No. 295 (Aug. 18, 2008).

in part and vacated in part, and remanded the case for further proceedings in accordance with its opinion.[3]

## I. FACTUAL BACKGROUND

The court's prior order on invalidity and the Federal Circuit's opinion on appeal detail the history of the patent-in-suit, the claims of the patent, and the history of this litigation.[4] That information and evidence is incorporated by reference herein. The facts most relevant to this order are summarized briefly below.

### A. The Patent

This case concerns U.S. Patent No. RE39,084 ("the '084 patent"), issued on May 2, 2006. The patent names Douglas Hagen as the sole inventor and B–K as the assignee. The patent has 19 claims, protecting "an adjustable mount for use with light fixtures that provides an easy to use mechanism for adjusting and setting the desired lighting angle for light emanating from the light fixture" while maintaining "the integrity of the sealed light system."[5] The mount is described as having "a novel structure whereby the lighting angle can be easily moved and set in all directions during installation, allowing the installer to stand back and evaluate the lighting effect without the need for an iterative process of tightening and loosening the installation screws in order to change the lighting angle or [the] need[ ] [to have] another person . . . hold the fixture in place while the lighting angle is evaluated before the installation is made permanent."[6]

Patent claims 3, 12, 15, 18, 19, 21 and 22 include the element of a "first resistance means for limiting free pivotal movement of [the] base member relative to [the] support member wherein said first resistance means comprises a tapered opening in said support member and a tapered post in said base member, said tapered opening sized and configured to receive said tapered post and allow frictional pivoting of said tapered post therein."

On February 11, 2008, the court held a *Markman* hearing to construe disputed terms in 13 of the 19 claims of the '084 patent.[7] The court construed the term "first resistance means" as "a tapered opening in the support member and a tapered post in the base member, with the tapered opening sized and configured to receive the tapered post and allow frictional pivoting of the tapered post in the tapered opening and equivalents thereof."[8]

### B. Evidence Relevant to Enablement and Best Mode

As stated, Douglas Hagen is the sole inventor named in the '084 patent. Hagen testified at his deposition that at the time the original patent application was filed, he had not decided on a particular angle for the taper of the post/opening element of the invention.[9]

David Counts is a B–K engineer who worked on development of the patented invention. He testified that the taper angle was the result of experimentation to find a self-releasing taper.[10]

---

3. *B–K Lighting, Inc. v. Fresno Valves & Castings, Inc.* ("*Fed. Cir. Op.*"), 375 Fed.Appx. 28 (Fed.Cir.2010) (slip. op.).

4. MSJ Order at 2–15.

5. Declaration of Taylor Foss ("Foss Decl."), Docket No. 121–4 (Mar. 24, 2008), Exh. 1, U.S. Patent number RE 39,084 ("'084 Patent") at col. 2:52–55.

6. *Fed. Cir. Op.*, 375 Fed.Appx. at 29.

7. Minutes of Markman Hearing, Docket No. 111 (Feb. 11, 2008).

8. Claim Construction Order, Docket No. 114 (Mar. 13, 2008)

9. Foss Decl., Exh. 8, Deposition of Douglas Hagen ("Hagen Depo.") at 67:22–68:14; 72:23–73:9).

10. Declaration of Douglas Q. Hahn ("Hahn Decl."), Docket No. 121–3 (Mar. 24, 2008),

Another B–K engineer, Gary Gillespie, testified that experimentation was required to perfect the taper and that B–K made several different prototypes.[11] He stated there were a number of problems that had to be overcome in designing the taper.[12] As Gillespie described it, "we played with [the taper] angle until we came up with an angle" that worked to "allow the fixture to be adjusted and relocked."[13] Gillespie said that "anything over 16 degrees in machinery terms is considered a self-releasing taper," and that B–K "came up with something larger than 16 degrees."[14] He testified he was "surprised" and "very, very shocked" that the final taper actually worked.[15]

Patrick Case is a B–K engineer who helped commercialize the patented invention. He testified at his deposition that the angle of the taper was chosen "arbitrarily" at the beginning of the process, and that B–K "never deviated" from it thereafter.[16] He also stated, however, that the angle of the taper was designed to be "easily self-releasing," and "well away from the transition between self-holding and self-releasing" tapers.[17] Case said that the taper's length was specifically selected.[18] He also testified that numerous

prototypes of the device were created over the course of two or three weeks.[19]

## C. Evidence Relevant to Inventorship

Hagen testified that the tapered post/opening interaction claimed in the '084 patent "was [his] idea."[20] He admitted, however, that a full set of parameters for the taper (including depth, diameter, compression, and "all kinds of other issues") were critical to the invention,[21] and he acknowledged that he was not aware of these details nor of the precise angle of the taper. Hagen stated that he did not know whether a decision had been made to use either a "self-releasing" or a "self-locking" taper.[22]

At his deposition, Gillespie agreed that it was proper to describe Hagen as a "conceptual guy [who] would come up with product concepts."[23] He testified that Hagen had conceived the idea of a heavy duty lamp mount that included a lighting element, a lighting support, a base member, a stud member, and a pass through for wiring that would permit 360 degree rotation.[24] He testified that Hagen "storyboard[ed] his ideas, his concepts, and then provide[d] them to you or the engineering department for implementation."[25] Gilles-

Exh. A, Deposition of David Counts ("Counts Depo.") at 24:2–11.

**11.** Foss Decl., Exh. 10 (Deposition of Gary Gillespie ("Gillespie Depo.")) at 28:3–30:18.

**12.** *Id.* at 28:10.

**13.** *Id.* at 29:13–19.

**14.** *Id.* at 29:7–13.

**15.** *Id.* at 30:17–18.

**16.** Foss Decl., Exh. 9 (Deposition of Patrick Case ("Case Depo.")) at 31:25–32:6.

**17.** *Id.* at 32:10–23.

**18.** *Id.* at 33:5–14.

**19.** *Id.* at 31:12–19; 35:6–10.

**20.** Foss Decl., Exh. 8 (Deposition of Douglas Hagen ("Hagen Depo.")) at 69:23.

**21.** *See id.* at 68:4–14.

**22.** *Id.* at 62:11–14. In fact, Hagen later testified that the taper in the commercial embodiment of the invention (360HD) uses a combination of both technologies. (*Id.* at 67:8–15.)

**23.** Gillespie Depo. at 88:17–19.

**24.** *Id.* at 88:22–91:4.

**25.** *Id.* at 92:11–14.

pie recalled that development of Hagen's concept for the '084 device involved "many meetings, brainstorming sessions with—at any given time, it could be Doug Hagen, Bruce Kowkowlsky, Patrick Case, myself, Ryan Barrios, all ... in the room at the same time discussing what we needed to do to fix this thing." [26]

Gillespie testified that he could not definitely identify the "first one to actually say the word 'taper,'" although he said that "the word 'taper' [might] have come from [Hagen]." [27] Gillespie testified that once the idea of a taper surfaced, he developed the taper's geometry and "pretty much everything else." [28] As Gillespie recalls events, he conceived the taper's design and Case developed the geometry for the wireway. [29] Gillespie had experience with self-releasing tapers due to his work as a machinist. [30]

Case testified that Hagen did not conceive the taper, and that he and Gillespie developed the concept for that element. [31] Case could not recall whether he or Gillespie had conceived of the taper, however, and acknowledged that Gillespie could have developed the concept first. [32] Case also conceded that Gillespie had spoken with Hagen outside his presence, and that he could not say "with any certainty" that Hagen had not given Gillespie the idea for the taper. [33] Case testified that Hagen provided little direction regarding the design of the device and that each element of the device protected by the '084 patent

was designed by some combination of him and Gillespie. [34]

### D. Prior Art

FVC has identified seven prior art references, and argues that, in different combinations, they render each claim of the '084 patent obvious. The references are: U.S. Patent No. 4,143,413 ("Kelly"), which describes a "fitter for mounting a luminaire, such as an outdoor floodlight, on a mounting member such as a pole [comprised of] three castings"; [35] U.S. Patent No. 4,008,-910 ("Roche"), which describes a swivel joint used in electrical lighting fixtures; U.S. Patent No. 4,386,393 ("Pike"), which describes a pivot joint used to support a light fixture; U.S. Patent No. 5,290,313 ("Heldreth"), which describes a "modular prosthetic implant system"; the Hydrel 7100 ("Hydrel"), which is an adjustable mount for a light fixture; the 360 SL Knuckle ("360SL"), B–K's predecessor to the device described in the '084 patent; and the Coronado 720 ("Coronado"), an adjustable mount for a light fixture, and the commercial embodiment of U.S. Patent No. 5,599,091 ("Kira").

### E. Evidence Relevant to Infringement (FVC's Devices)

B–K asserts that a knuckle included in FVC's Vision 3 FL series ("FL series") of architectural flood lighting products ("the K2 knuckle") infringes the '084 patent. FVC has obtained two patents for the K2 knuckle design: U.S. Patent No. 6,966,679, issued on November 22, 2005 to Monte

---

**26.** *Id.* at 26:7–13.

**27.** *Id.* at 32:13.

**28.** *Id.* at 27:9–12.

**29.** *Id.* at 27:9–12. As noted, Gillespie asserts that Hagen's only involvement was to come up with the word "taper." He asserts that "the entire design is either [his] or Patrick Case's. Completely." (*Id.* at 32:13–15.)

**30.** *Id.* at 26:19.

**31.** Case Depo. at 107:18–23.

**32.** *Id.* at 108:1–9.

**33.** *Id.* at 108:10–16.

**34.** *See id.* at 30:20–51:13.

**35.** See MSJ Order at 7–8.

Matts and Jay Showalter ("the '679 patent"), and U.S. Patent No. 7,108,405, issued on September 19, 2006 to Matts and Showalter ("the '405 patent").[36] The '679 patent claims a "self-locking taper" feature, included in the accused FL series products, that facilitates adjustment and locking in place of lighting fixtures.[37]

## II. PROCEDURAL BACKGROUND

### A. History of the Litigation

B–K commenced this action on May 10, 2006. In its answer to B–K's first amended complaint, FVC asserted ten affirmative defenses, including (1) non-infringement; (2) invalidity under 35 U.S.C. §§ 102, 103, and 112; and (3) invalidity for failure to name the correct inventor.[38] FVC also filed a counterclaim seeking a declaratory judgment of invalidity, unenforceability, and non-infringement, as well as relief for unfair competition under Business & Professions Code § 17200.[39] On October 9, 2007, the court issued an

order directing the parties to disclose their asserted claims by filing preliminary infringement contentions and preliminary invalidity contentions.[40] The court also ordered the parties to file a joint claim construction chart.[41] The court issued an order construing the claims of the '084 patent on March 13, 2008.[42]

On March 24, 2008, B–K filed a motion for partial summary judgment of validity of the patent-in-suit.[43] The same day, FVC filed a competing motion seeking summary judgment of invalidity.[44] On March 25, 2008, FVC filed a motion for summary judgment of noninfringement.[45] On March 31, 2008, the court deemed B–K's motion for partial summary judgment the operative motion on invalidity, and construed FVC's motion as opposition to that motion.[46] On May 23, 2008, the court denied B–K's motion for summary judgment of validity and granted FVC's motion for summary judgment of invalidity on grounds of obviousness.[47] Because the

---

**36.** Declaration of Duane H. Mathiowetz ("Mathiowetz Decl."), Docket No. 139 (Mar. 25, 2008), Exh. 2, U.S. Patent No. 6,966,679 ("'679 Patent"); *id.*, Exh. 3, U.S. Patent No. 7,108,405 ("'405 Patent").

**37.** '679 Patent, col. 3:56.

**38.** Answer, Affirmative Defenses, and Counterclaim to First Amended Complaint ("Answer"), ¶¶ 35–39.

**39.** *Id.*, ¶¶ 46–60.

**40.** Order Vacating Markman Hearing; Requiring Disclosure of Asserted Claims, Preliminary Infringement Contentions and Preliminary Invalidity Contentions, Docket No. 72 (Oct. 9, 2007).

**41.** *Id.*

**42.** Claim Construction Order, Docket No. 114.

**43.** Motion for Partial Summary Judgment as to Validity and Enforceability ("B–K Validity MSJ"), Docket No. 121 (Mar. 24, 2008). B–K

also filed a motion seeking summary judgment on FVC's counterclaim for violation of Business & Professions Code § 17200. (Motion for Summary Judgment as to Fresno Valves' Section 17200 Claim, Docket No. 117 (Mar. 24, 2008).) On May 23, 2008, the court granted in part and denied in part the motion for summary judgment on FVC's § 17200 counterclaim. (Order Granting in Part and Denying in Part B–K Lighting's Motion for Summary Judgment on FVC's § 17200 claim, Docket No. 236 (May 23, 2008).) That motion and order are not at issue here.

**44.** Motion for Summary Judgment of Invalidity ("FVC Invalidity MSJ"), Docket No. 124 (Mar. 24, 2008).

**45.** Motion for Summary Judgment of No Infringement ("Infringement MSJ"), Docket No. 136 (Mar. 25, 2008).

**46.** Order Directing Parties to Refile Motions in Accordance With Court's Prior Direction, Docket No. 146 (Mar. 31, 2008).

**47.** MSJ Order at 45.

court found that the patent-in-suit was invalid as obvious, it did not address the parties' motions concerning other grounds for invalidity or infringement.[48]

## B. The Court's Prior Order on Invalidity

In its prior order on invalidity, the court assessed FVC's contention that the '084 patent was invalid as obvious in light of the prior art references it identified. The parties did not dispute that most of the elements of the '084 patent were obvious in light of the prior art.[49] The parties disputed only whether four elements were obvious: the first locking means, the stud member, the rotational limiting means, and the first resistance means.[50]

The court determined that FVC had demonstrated by clear and convincing evidence that each of the four disputed elements was obvious in light of the prior art. With regard to the "first resistance means," the court found that Hydrel taught the "frictional pivoting" described in claims 3, 12, 15, 18, 19, and 22.[51]

The court then addressed whether it would have been obvious to one skilled in the art to combine the elements of the prior art with the 360SL to create the '084 patent.[52] It concluded it was apparent that the invention claimed in the '084 patent was obvious in light of prior art given: (1) the fact that the 360SL discloses almost all of the elements claimed in the '084 patent; (2) the fact that the only differ-

ences between the 360SL and the '084 patent are the reversed orientation of the connection between the base and stud members, the absence of a first resistance means, and the lack of a seal between the base member and support member; (3) the fact that it would have been obvious to one skilled in the art to reverse the interaction between the stud member and the base member; (4) the fact that it would have been obvious in light of Hydrel to add a seal between the base member and the support member; and (5) the fact that applying a taper to the base member/support member connection would have been obvious in light of Hydrel's taper, and that it yielded a predictable result—to provide the frictional rotation claimed in the '084 patent.[53] The court alternatively held the record was clear that the combination of the old and new elements was also obvious.[54]

Because the court found that all of the asserted claims of the '084 patent were obvious in light of the prior art, it concluded that the patent as a whole was invalid under 35 U.S.C. § 103(a).[55] Consequently, it granted FVC's motion for summary judgment of invalidity of the patent-in-suit.

## C. The Federal Circuit's Opinion

B–K appealed the district court's summary judgment of invalidity to the Court of Appeals for the Federal Circuit.[56] The Federal Circuit affirmed in part and vacated in part, remanding the case for further

---

48. *Id.*

49. Specifically, the court found that the parties did not dispute that prior art disclosed the adjustable mount, the support member, the base member, the first seal, the second locking means, the second resistance means, the first and second sealing means, the third sealing means, and the fourth sealing means. (*Id.* at 20–36.)

50. *Id.*

51. *Id.* at 29–34.

52. *Id.* at 36.

53. *Id.* at 45.

54. *Id.*

55. *Id.*

56. Notice of Appeal to the Federal Circuit, Docket No. 295 (Aug. 18, 2008).

proceedings in accordance with its opinion.[57]

The court of appeals affirmed the court's conclusion respecting claims of the '084 patent that do not include the limitation of frictional pivoting (claims 5, 7, 8, and 23–31), finding them "invalid because the claim breadth does not distinguish their scope from the prior art."[58] With regard to patent claims that include the frictional pivoting limitation, however, the panel held that there were triable issues of fact as to whether that element was obvious.[59] Specifically, the panel found that conflicting testimony by the parties' experts as to whether Hydrel teaches frictional pivoting precluded summary judgment on the issue.[60]

### D. Remand and Supplemental Briefing

On remand from the Federal Circuit, the court conducted a case management conference and directed the parties to file supplemental briefing.[61] On October 22, 2012, FVC filed a supplemental memorandum in support of its earlier motions for summary judgment of invalidity and noninfringement.[62] The same day, B–K filed supplemental opposition.[63] On November 5, 2012, FVC filed a response to B–K's supplemental opposition.[64] B–K filed a response the same day.[65]

### III. DISCUSSION

#### A. Scope of the Court's Review on Remand

■ The Federal Circuit vacated judgment as to claims 3, 12, 15, 18, 19, 21, and 22 because it found that there were factual disputes as to whether the Hydrel reference disclosed the first resistance means claimed in the '084 patent. It issued a general mandate directing the court to conduct further proceedings consistent with its opinion. The Federal Circuit's opinion discussed only the combination of BK–Lighting's model 360SL and the Hydrel reference; it did not address the other prior art references identified by FVC. The opinion also did not address whether there were triable issues of fact as to whether a person of ordinary skill in the art would have turned to the well-known concept of tapers to create the "first resistance means" claimed in the '084 patent.

B–K argues that the rule of mandate precludes the court from considering FVC's other obviousness arguments. It asserts that the Federal Circuit already considered whether prior art other than Hydrel disclosed the frictional pivoting element of the '084 patent and impliedly decided that it did not. B–K contends that the Federal Circuit's consideration of additional prior art was implicit in its ruling because the parties submitted extensive

---

**57.** *Fed. Cir. Op.*, 375 Fed.Appx. at 32.

**58.** *Id.*

**59.** *Id.* at 1.

**60.** *Id.* at 7.

**61.** Scheduling Conference, Docket No. 354 (Sept. 10, 2012).

**62.** Supplement to Motion for Summary Judgment as to Invalidity and No Infringement ("FVC Supp. Br."), Docket No. 355 (Oct. 22, 2012).

**63.** Supplemental Brief re Partial Summary Judgment Motion for Finding That Patent Not Invalid and Unenforceable ("B–K Supp. Br."), Docket No. 356 (Oct. 22, 2012).

**64.** Response to Plaintiff's Supplemental Brief re Partial Summary Judgment Motion for Finding That Patent Not Invalid and Unenforceable ("FVC Supp. Response"), Docket No. 358 (Nov. 5, 2012).

**65.** Plaintiff's Response to Defendant's Supplemental Brief Re Summary Judgment Motions ("B–K Supp. Response"), Docket No. 359 (Nov. 5, 2012).

briefing on the Kelly, Heldreth, and Coronado references, and discussed the significance of additional prior art in oral arguments before the court of appeals. FVC counters that the Federal Circuit's decision and mandate only preclude the court from concluding that the undisputed evidence shows that Hydrel disclosed the "first resistance means."

■ The mandate rule provides that a district court is foreclosed from considering further issues actually decided on appeal. *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1360 (Fed.Cir.2008) ("The mandate rule provides that 'issues actually decided [on appeal]—those within the scope of the judgment appealed from, minus those explicitly reserved or remanded by the court—are foreclosed from further consideration'"); *Engel Industries, Inc. v. Lockformer Co.*, 166 F.3d 1379, 1383 (Fed.Cir. 1999) ("Unless remanded, all issues within the scope of the appealed judgment are deemed incorporated within the mandate and thus are precluded from further adjudication"); *Laitram Corp. v. NEC Corp.*, 115 F.3d 947, 951 (Fed.Cir.1997) (issues that the court of appeals has decided explicitly or by necessary implication may not be reexamined by the district court). The district court is free on remand, however, to consider issues outside the scope of the mandate. *Engel Industries*, 166 F.3d at 1383 (citing *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 168, 59 S.Ct. 777, 83 L.Ed. 1184 (1939)); see also *Clark v. United States*, 656 F.3d 1317, 1321 (Fed. Cir.2011) ("Because the government's ... argument was not decided by this court in the earlier appeal, the mandate rule did not preclude the trial court's consideration of this argument on remand"). "Following appellate disposition, a district court is free to take any action that is consistent with the appellate mandate, as informed by both the formal judgment issued by the court and the court's written opinion." *Exxon Chemical Patents, Inc. v. Lubrizol Corp.*, 137 F.3d 1475, 1484 (Fed.Cir.1998); see also *Laitram*, 115 F.3d at 951 ("the district court cannot give relief beyond the scope of th[e] mandate, but it may act on matters left open by the mandate").

■ The scope of the issues presented to and decided by the court of appeals is measured by the scope of the judgment that is appealed. *Engel Industries*, 166 F.3d at 1382; see also *Laitram*, 115 F.3d at 952 ("The scope of our review, and our power to review, was limited to the sole order that was appealed"). Issues not reached by the trial court are not within the scope of the judgment from which appeal is taken. *Tronzo v. Biomet, Inc.*, 236 F.3d 1342, 1348 (Fed.Cir.2001) (citing *Laitram*, 115 F.3d at 951–52; *Exxon*, 137 F.3d at 1478–79).

■ As noted, the Federal Circuit did not explicitly decide whether or not the court could grant summary judgment on the basis of Dornfeld's uncontroverted testimony that a person of ordinary skill in the art would have turned to the well-known concept of tapers to create the "first resistance means" claimed in the '084 patent. By vacating the court's order granting summary judgment as to claims 3, 12, 15, 18, 19, 21, and 22, however, the court impliedly and necessarily decided that summary judgment could not be granted on the alternative basis identified by the court. Because the court concluded that there were two distinct and independent bases upon which it was appropriate to grant summary judgment as to those claims of the patent, the Federal Circuit had to overrule both bases to vacate the judgment.[66] *See Laitram*, 115 F.3d at 951

---

66. MSJ Order at 34 ("Moreover, FVC has produced uncontroverted evidence that *even without considering Hydrel,* a person of skill in the art would have known to apply existing taper technology to create the "first resistance means" (emphasis added)).

("Issues decided implicitly by courts of appeals may not be reexamined by the district court ... [when] those issues [are] decided by necessary implication"). The court concludes, therefore, that the rule of mandate precludes it from considering either basis on which it previously relied in finding that the undisputed evidence showed the "first resistance means" was obvious.[67]

■ The Federal Circuit did not, however, reject by necessary implication FVC's other obviousness arguments, which the court did not address in its order granting summary judgment. Because the court did not reach FVC's obviousness arguments concerning other prior art references, they fell outside the scope of appeal and could not have been decided by the Federal Circuit. *Tronzo*, 236 F.3d at 1348–49; *Laitram*, 115 F.3d at 952. Consequently, the court is not precluded from considering those arguments on remand. *Id.* ("It is incorrect to conclude that we decided issues not only undecided on the merits by the trial court ..., and thus on appeal unripe, but also neither ... discussed in our opinion, nor necessary to our disposition of the appeal," citing *Conway v. Chemical Leaman Tank Lines, Inc.*, 644 F.2d 1059, 1062 (5th Cir.1981) (the district court may consider on remand a "meritorious issue never previously passed upon by [it] and never submitted to or decided by the appellate court in the previous appeal")).

The general mandate issued by the Federal Court is broad and does not foreclose the court from considering previously undecided questions of obviousness or other invalidity arguments advanced by FVC. The Federal Circuit could have limited the scope of the remand—e.g., by specifically remanding for trial on the issue of invalidity/obviousness—but it did not do so. Compare *Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.*, 576 F.3d 1348, 1353–54 (Fed.Cir.2009) (holding that the district court exceeded the scope of the mandate when it considered new invalidity and unenforceability defenses that had not been raised on appeal, where the mandate "reinstate[d] the jury verdict of validity, and remand[ed] for a new trial on infringement and reassessment of damages"). The court concludes, therefore, that the Federal Circuit's decision and mandate do not preclude it from evaluating FVC's additional obviousness arguments.

The parties do not dispute, moreover, that the court can consider FVC's other defenses, which it found unnecessary to address in its prior order. The court will therefore consider whether the '084 patent is invalid for anticipation or failure to enable. For reasons discussed *infra*, neither party is entitled to summary judgment on the validity of the remaining '084 patent claims. Consequently, the court will also consider whether the patent is unenforceable due to inequitable conduct or failure to name the correct inventor. Finally, the court will consider FVC's argument that it has not infringed the '084 patent.

**B. Legal Standard Governing Motions for Summary Judgment**

A motion for summary judgment must be granted when "the pleadings, deposi-

---

**67.** B–K cites the dissent as support for its renewed argument that secondary considerations weigh in favor of a finding of nonobviousness. (See B–K Supp. Br. at 3.) The argument regarding secondary considerations set forth by Judge Newman in her dissent was expressly rejected in the majority opinion. (*Fed. Cir. Op.*, 375 Fed.Appx. at 30 n. 1.) The Federal Circuit did not reverse the court's finding concerning B–K's secondary considerations evidence. The court therefore declines to consider B–K's attempt to re-argue secondary considerations, as its earlier ruling was left intact by the court of appeals and is law of the case.

tions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R.CIV.PROC. 56(c). A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. On an issue as to which the nonmoving party will have the burden of proof, however, the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case. *See id.* If the moving party meets its initial burden, the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); FED. R.CIV.PROC. 56(e).

In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence. Rather, it draws all inferences in the light most favorable to the nonmoving party. *See T.W. Electric Service, Inc. v. Pacific Electric Contractors Ass'n,* 809 F.2d 626, 630–31 (9th Cir.1987). The evidence presented by the parties must be admissible. FED.R.CIV.PROC. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Falls Riverway Realty, Inc. v. Niagara Falls,* 754 F.2d 49, 56 (2d Cir.1985); *Thornhill Pub.*

*Co., Inc. v. GTE Corp.,* 594 F.2d 730, 738 (9th Cir.1979).

## C. Legal Standard Governing Patent Invalidity

FVC contends the patent is invalid as anticipated, as obvious, for lack of enablement, for failure to identify the best mode, as indefinite, for failure to state the correct inventorship, and because of inequitable conduct. B–K seeks summary judgment on all of these defenses other than obviousness. FVC seeks summary judgment of invalidity on the basis of anticipation, obviousness, enablement, best mode, indefiniteness, and inventorship.

██ A duly issued patent is presumed valid, and the party claiming otherwise bears the burden of proving invalidity by clear and convincing evidence. See, e.g., 35 U.S.C. § 282 ("A patent shall be presumed valid"); *University of Rochester v. G.D. Searle & Co.,* 358 F.3d 916, 920 (Fed. Cir.2004) ("[A] party 'seeking to invalidate a patent at summary judgment must submit ... clear and convincing evidence of invalidity' "); *Geneva Pharmaceuticals, Inc. v. GlaxoSmithKline PLC,* 349 F.3d 1373, 1377 (Fed.Cir.2003) ("This court gives due weight to a patent's presumed validity under 35 U.S.C. § 282 (2000), and an accused infringer must show by clear and convincing evidence that a patent is invalid"); *Brown & Williamson Tobacco Corp. v. Philip Morris, Inc.,* 229 F.3d 1120, 1124 (Fed.Cir.2000) ("[T]he party asserting invalidity of a patent must prove the disputed facts by clear and convincing evidence"); *Mas–Hamilton Group v. LaGard, Inc.,* 156 F.3d 1206, 1216 (Fed.Cir. 1998) ("Under 35 U.S.C. § 282, a patent is presumed valid and one challenging its validity bears the burden of proving invalidity by clear and convincing evidence"). "[A] patentee has the burden of going forward with rebuttal evidence once a chal-

lenger has presented a prima facie case of invalidity." *Mas–Hamilton Group*, 156 F.3d at 1216. If rebuttal is offered, "the presumption of validity remains intact and the ultimate burden of proving invalidity remains with the challenger throughout the litigation." *Id.*

### D. Whether the Remaining Claims Are Invalid for Obviousness

#### 1. Legal Standard Governing Obviousness

 A patent claim is invalid as obvious "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art." 35 U.S.C. § 103. "Obviousness is a question of law based on underlying factual findings: (1) the scope and content of the prior art; (2) the differences between the claims and the prior art; (3) the level of ordinary skill in the art; and (4) objective considerations of nonobviousness." *Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*, 688 F.3d 1342, 1360 (Fed.Cir.2012) (citing *Graham v. John Deere Co.*, 383 U.S. 1, 17–18, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966)); see also *Eli Lilly & Co. v. Teva Pharm. USA, Inc.*, 619 F.3d 1329, 1336 (Fed.Cir.2010).

 A party seeking to invalidate a patent as obvious must "demonstrate 'by clear and convincing evidence that a skilled artisan would have had reason to combine the teaching of the prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation of success from doing so.'" *In re Cyclobenzaprine Hydrochloride Extended–Release Capsule Patent Litig.*, 676 F.3d 1063, 1069 (Fed.Cir.2012) (citing *Procter & Gamble Co. v. Teva*

*Pharms. USA, Inc.*, 566 F.3d 989, 994 (Fed.Cir.2009) (quoting *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1361 (Fed.Cir. 2007))); see also *Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co.*, 308 F.3d 1167, 1187 (Fed.Cir.2002) ("[A] party seeking a judgment that a patent is obvious bears the burden of demonstrating by clear and convincing evidence that the teachings of the prior art would have suggested the claimed subject matter to one of ordinary skill in the art").

#### 2. Whether the Remaining Claims Are Obvious in Light of Heldreth as a Substitute for Hydrel

 FVC contends that the remaining claims (claims 3, 12, 15, 18, 19, 21, and 22) are obvious in light of Heldreth as a substitute for Hydrel. As FVC recognizes, the court already held that there is a factual dispute as to whether Heldreth is analogous art. It nonetheless argues that the court should find Heldreth analogous in light of two Federal Circuit decisions issued after the court's prior summary judgment order: *Wyers v. Master Lock*, 616 F.3d 1231 (Fed.Cir.2010), and *Innovention Toys v. MGA Entertainment, Inc.*, 637 F.3d 1314 (Fed.Cir.2011).

FVC's characterization of *Wyers* and *Innovention*, however, suggests that both cases simply apply pre-existing law concerning the definition of analogous art.[68] Neither *Wyers* nor *Innovention* represents a change in the law since the court's 2008 summary judgment order. Neither decision overrules the Federal Circuit holding, cited in the court's prior order, that whether a reference is "analogous" is a question of fact. *See ArcelorMittal France v. AK Steel Corp.*, 700 F.3d 1314, 1324 (Fed.Cir.2012) ("Whether a particular technology is analogous art is a question of

---

68. FVC Supp. Br. at 8 (describing the Federal Circuit's "traditional" two-step analysis for determining whether a reference is analogous, citing *In re Bigio*, 381 F.3d 1320, 1325 (Fed.Cir.2004)).

fact.... [W]e think this factual dispute was for the jury to resolve," citing *Wyers*, 616 F.3d at 1237–38); *Innovention*, 637 F.3d at 1321 ("Whether a prior art reference is 'analogous' is a question of fact").

The court previously concluded that the parties' experts offered conflicting opinions as to whether Heldreth involves analogous subject matter.[69] This conflicting testimony creates triable issues of material fact.[70] *See State Contracting & Eng'g Corp. v. Condotte America, Inc.*, 346 F.3d 1057, 1069 (Fed.Cir.2003) (conflicting expert testimony as to whether a prior art reference was analogous created an issue of material fact precluding summary judgment on a claim that patents for forming an integrated cement column and pile were invalid as obvious). Because there is a factual dispute as to whether the Heldreth reference is analogous, the court will not consider Heldreth in assessing whether it is appropriate to grant summary judgment of invalidity based on obviousness.

### 3. Whether the Remaining Claims Are Obvious in Light of Other Prior Art Combinations

In its supplemental brief, FVC argues that the remaining claims are invalid as obvious in light of prior art combinations the court did not consider in its previous order on invalidity.[71] It asserts that "[t]he Coronado prior art ... and the Roche patent in particular should be considered." [72] FVC does not specify how or why the court should consider the Coronado prior art and the Roche patent.[73] Instead it refers the court to a chart included in the court's prior invalidity order, reproduced in relevant part below.[74]

| Claims | Prior Art | In Light Of | Reason |
|---|---|---|---|
| 18, 19, 21, and 22 | Kelly | (Pike or Hydrel) and (Roche and/or 360SL) | Pike and Hydrel disclose a first resistance means; |
| | | | Roche and 360SL disclose a rotational limiting means; 360SL discloses a slot |
| 3, 5, 12, 15, 18, 19, 21, and 22 | Coronado | Hydrel | Hydrel discloses a first locking means, first seal/second sealing means, first |

**69.** Compare Declaration of John D. Pratt in Support of Motion for Partial Summary Judgment As To the Validity and Enforceability of B–K Lighting, Inc.'s Patent ("Pratt Invalidity Decl."), Docket No. 192 (Apr. 14, 2008), ¶ 4 ("Heldreth is from a nonanalogous prosthesis art and would not be known to those in the outdoor lighting fixture arts"); *id.*, ¶ 14 (stating that the subject matter of the Heldreth patent, a modular prosthesis system, is "nonanalogous and unrelated to outdoor lighting systems," and would not be known to one of ordinary skill in the outdoor lighting arts), with Declaration of Dr. David Dornfeld in Support of Motion for Summary Judgment as to Invalidity ("Dornfeld Invalidity Decl."), Docket No. 125 (Mar. 24, 2008), ¶ 79 (stating Dornfeld's opinion that "[a] person of ordinary skill in the art ... would find and apply the tapered opening and post of Heldreth").

**70.** Cf. *Fed. Cir. Op.*, 375 Fed.Appx. at 32 ("This conflict in expert declarations ... created a genuine issue of material fact that made summary judgment inappropriate").

**71.** In its prior order on invalidity, the court considered Pike in addition to Hydrel. It concluded that FVC had not shown by clear and convincing evidence that Pike taught frictional resistance, and hence the first resistance means. (MSJ Order at 30.) For the reasons stated in its prior order, the court declines to find the remaining claims obvious in light of Pike. (*Id.*)

**72.** FVC Supp. Br. at 6.

**73.** *Id.*

**74.** MSJ Order at 19–20.

resistance means, and rotational
limiting means

FVC has not argued that either Coronado or Roche discloses the first resistance means. As respects Roche, it has asserted rather that Roche discloses a rotational limiting means, such that Kelly, in light of Roche, and other prior art that discloses a first resistance means (Pike or Hydrel), renders claims 18, 19, 21, and 22 obvious.[75] FVC also argued that Coronado in light of Hydrel renders claims 3, 5, 12, 15, 18, 19, 21 and 22 obvious, because Hydrel discloses a first resistance means not disclosed by Coronado.[76] As suggested by the chart included in the court's prior invalidity order, FVC did not contend in its original summary judgment briefing that Coronado or Roche disclosed the first resistance means.[77] Therefore, in its order, the court did not consider that question.

FVC did not and has not adduced evidence that either Coronado or Roche discloses the first resistance means; to the contrary, its expert's declaration clearly states that neither prior art reference discloses that element of the remaining claims.[78] Consequently, the court finds that FVC has not adduced evidence that the remaining claims are obvious in light of Coronado or Roche alone. Although FVC has argued that the remaining claims are obvious in light of Coronado or Roche in combination with Hydrel or Hydrel and Kelly, the Federal Circuit determined that there is a material dispute of fact as to whether Hydrel discloses the first resistance means; accordingly, there is a factual dispute as to whether either Coronado or Roche in light of Hydrel or Hydrel and Kelly renders the remaining claims obvious.

Although the court's earlier order addressed whether the knowledge of a person of ordinary skill in the art combined with Kelly rendered the first resistance means obvious,[79] it did not consider whether Kelly independently discloses the first resistance means. In its original summary judgment briefing, FVC argued that the trunnion and opening in Kelly were indistinguishable from the tapered post and opening in the '084 patent, and thus that Kelly disclosed the first resistance means.[80] It adduced evidence that the opening that receives the trunnion in Kelly is tapered, citing two figures in the Kelly patent that depict a tapered opening.[81]

75. *Id.* In its prior order, the court found that the 360SL disclosed a rotational limiting means, and the Federal Circuit affirmed this conclusion. Whether Roche discloses a rotational limiting means is therefore no longer of significance to this case.

76. *Id.*

77. See MSJ Order at 19 (summarizing combinations of prior art identified by FVC).

78. Dornfeld Invalidity Decl., ¶ 102 ("Coronado 720/Kira explicitly discloses every element ... except for the ... first resistance means ..."); see also *id.*, ¶¶ 26–29 (failing to list the first resistance means among the elements disclosed by the Roche patent).

79. Specifically, the court considered whether a person of skill in the art would have known to substitute taper technology for the trunnion in Kelly. (MSJ Order at 33.) The court concluded that B–K had adduced no evidence controverting Dornfeld's assertion that replacing the trunnion in Kelly with a taper would have been obvious to a person of skill in the art. (*Id.*) As stated, the Federal Circuit implicitly considered and rejected this alternative basis for finding the first resistance means obvious, so the court is precluded from reconsidering it on remand. *See supra*, Part III(A).

80. FVC Invalidity MSJ at 9–10.

81. *See* Dornfeld Invalidity Decl., Exh. 6 ("Kelly patent"), at 5–6 (figures 2 and 4).

FVC's expert suggests in his declaration that a frictional pivoting effect is created by the fit of the trunnion in the tapered opening, stating: "Frictional pivoting of the trunnion in the tapered opening is limited by the ribs and grooves in addition to the trunnion and cooperative tapered opening."[82] His declaration is somewhat inconsistent, however, as to whether the trunnion and opening in Kelly independently disclose the first resistance means claimed in the '084 patent.[83]

B–K argues that Kelly does not teach key elements of the first resistance means.[84] Specifically, it argues that Kelly does not teach use of a tapered opening and tapered post to allow for frictional pivoting.[85] Rather, it asserts that Kelly teaches away from the use of a tapered post/opening for frictional pivoting by using ribs and grooves to limit rotation instead. It further notes that the written description in the Kelly patent of the interaction of the trunnion and the opening does not specify the use of tapered surfaces.[86] B–K's expert clearly states: "Kelly simply does not disclose or teach" frictional pivoting, and in fact teaches away from it, "as the only limitation on rotation disclosed is provided by entirely different structures."[87] The conflicting testimony of the parties' experts as to whether Kelly discloses or teaches away from the first resistance means claimed in the '084 patent raises triable issues of fact.[88]

Because the parties have presented conflicting expert testimony as to whether Hydrel and/or Kelly disclose the first resistance means, because there are factual disputes as to whether Heldreth constitutes analogous art, because FVC has not adduced sufficient evidence to show that Pike teaches frictional pivoting, and because FVC has adduced no evidence that Coronado and Roche disclose the first resistance means, the court concludes that material issues of fact preclude summary judgment on the question of the obviousness of the remaining claims. The court therefore denies FVC's motion for summary judgment of invalidity and B–K's motion for summary judgment of validity to the extent that those motions address obviousness.

### E. Whether the Remaining Claims Are Invalid for Anticipation

 A patent claim is invalid as anticipated under 35 U.S.C. § 102 if a single prior art reference contains, either explicitly or implicitly, all of the elements of the claim. *See Oakley, Inc. v. Sunglass Hut International,* 316 F.3d 1331, 1339 (Fed.Cir.2003) ("A determination that a claim is invalid as being anticipated or lacking novelty under 35 U.S.C. § 102 requires a finding that 'each and every limitation is found either expressly or inherently in a single prior art reference,'" quoting *Celeritas Techs. Ltd. v. Rockwell Int'l Corp.,* 150 F.3d 1354, 1360 (Fed.Cir. 1998)). Whether or not a single reference contains all of the elements of a claim is a question of fact. *See Beckson Marine,*

---

**82.** Dornfeld Invalidity Decl., ¶ 21.

**83.** Compare Dornfeld Invalidity Decl., ¶ 21 ("It is my opinion that Kelly discloses a first resistance means"), with *id.,* ¶ 90 ("Kelly discloses all elements of claims 18, 19, 21, and 22 except for the first resistance means . . .").

**84.** B–K Validity MSJ at 6.

**85.** *Id.*

**86.** Kelly Patent at col. 4:20–27 (describing the trunnion and opening without discussing taper).

**87.** Pratt Invalidity Decl., ¶ 8.

**88.** Cf. *Fed. Cir. Op.,* 375 Fed.Appx. at 32 ("This conflict in expert declarations . . . created a genuine issue of material fact that made summary judgment inappropriate").

*Inc. v. NFM, Inc.*, 292 F.3d 718, 725 (Fed. Cir.2002) (" 'Anticipation under 35 U.S.C. § 102 means lack of novelty, and is a question of fact,' " quoting *Brown v. 3M*, 265 F.3d 1349, 1351 (Fed.Cir.2001)).

 Although anticipation is a question of fact, where there are no "genuine factual disputes underlying the anticipation inquiry, the issue is ripe for judgment as a matter of law." *SmithKline Beecham Corp. v. Apotex Corp.*, 403 F.3d 1331, 1343 (Fed.Cir.2005), cert. denied, 547 U.S. 1218, 126 S.Ct. 2887, 165 L.Ed.2d 938 (2006). Evidence of anticipation, like all questions of invalidity, "must be clear as well as convincing." *Schumer v. Lab. Computer Sys., Inc.*, 308 F.3d 1304, 1315 (Fed.Cir.2002); *see Semiconductor Energy Lab. Co. Ltd. v. Chi Mei Optoelectronics Corp.*, 531 F.Supp.2d 1084, 1105 (N.D.Cal. 2007) ("The burden of proof in all instances falls upon the party seeking to establish the invalidity of a patent claim, who 'must overcome the presumption of validity in 35 U.S.C. § 282 by clear and convincing evidence,' " quoting *State Contracting & Eng'g Corp. v. Condotte Am., Inc.*, 346 F.3d 1057, 1067 (Fed.Cir.2003)).

"Anticipation is typically established by one skilled in the art who must 'identify each claim element, state the witness['] interpretation of the claim element, and explain in detail how each claim element is disclosed in the prior art reference.' " *Lucent Technologies, Inc. v. Microsoft Corp.*, 544 F.Supp.2d 1080, 1091 (S.D.Cal.2008) (quoting *Schumer*, 308 F.3d at 1315). "The testimony is insufficient if it is merely conclusory." *Schumer*, 308 F.3d at 1315–16. Moreover, it must be clear. It is not "the task of the district court, to attempt to interpret confusing or general testimony to determine whether a case of invalidity has been made out, particularly at the summary judgment stage." *Id.* at 1316.

 FVC argues that claims 3, 12, and 15 are anticipated by Kelly. FVC argues that claims 3, 12, and 15 are anticipated by Kelly. It contends that the Federal Circuit has affirmed that all but one element of these claims—the first resistance means—is disclosed by Kelly. FVC asserts that Kelly also discloses the first resistance means, and thus contains all of the elements of claims 3, 12, and 15.

FVC's fails to demonstrate that it is entitled to summary judgment on its anticipation claim for two reasons. First, its reading of the Federal Circuit's opinion is inaccurate. The Federal Circuit affirmed the court's conclusion in its prior invalidity order that the first locking means and stud member were obvious in light of Hydrel and 360SL, respectively—not Kelly.[89] The court never determined whether Kelly rendered those elements obvious, so such a determination was not within the scope of the appeal to the Federal Circuit.

Second, there are triable issues of fact as to whether Kelly discloses the first resistance means and first locking means. As the court noted in its earlier discussion of obviousness, whether Kelly discloses a first resistance means turns on a factual dispute that cannot be resolved on summary judgment, because the parties have adduced conflicting expert testimony as to whether the trunnion and opening in Kelly disclose or teach away from frictional pivoting.

---

**89.** MSJ Order at 23 ("the court will not rely on Kelly in assessing the obviousness of the first locking means.... [T]he court concludes that Hydrel teaches the first locking means claimed in the '084 patent"); *id.* at 27–28

("The parties dispute whether Kelly and/or the 360SL teach the elements of the stud member in the '084 patent.... To resolve this issue, it is sufficient to refer to the 360SL alone").

The court suggested in its prior order, moreover, that there was a factual dispute as to whether Kelly discloses a "first locking means," In the '084 patent, the "first locking means" is achieved through the use of a screw that secures the base member to the support member. Like the '084 patent, Kelly discloses a threaded bolt that locks the base member to the support member.[90] The evidence thus suggests that Kelly's threaded bolt is the equivalent of the '084 patent's screw, such that Kelly discloses the "first locking means." Kelly also includes, however, an ancillary structure that creates a lock.[91] B–K's expert asserts that the ancillary structure in Kelly is "needed" for locking, and that the threaded bolt alone does not lock the support member to the base member.[92] This is corroborated in part by the testimony of FVC's expert, who concedes that ribs 85 and 87 provide for "additional locking effect upon tightening of the bolt."[93] The court concludes that this conflicting evidence creates triable issues of fact that preclude summary judgment as to whether Kelly discloses a first locking means.

Finally, FVC's anticipation argument fails because Kelly does not disclose the "stud member" specified in claims 3, 12, and 15. In its claim construction order, the court construed the term "stud member" as a "part for structurally coupling the claimed apparatus to a power source, such as a junction box."[94] Claims 3, 12, and 15 describe a "stud member having an upper end, a lower end, and a stud opening through said stud member, said upper end of said stud member in said base opening and rotationally interacting therewith, said lower end of said stud member configured to connect to a source of electrical power, said stud opening connected to said second passageway in said base member to allow passage of said electrical wires from said source of electrical power to said member."[95]

FVC contends that Kelly discloses the "stud member" described in claims 3, 12, and 15 because it claims a "pole" that is "centered and seated" in a "base portion."[96] The "pole" structurally couples the mounting arrangement to a power source, with power lines extending through the inside of the pole.[97] B–K counters that Kelly does not disclose the structure described in claims 3, 12, and 15 because it does not specify that the lower end of the pole should be configured to connect to a source of electrical power.[98] FVC proffers its expert's testimony that one of ordinary skill in the art would read the Kelly specification in light of the drawings and understand that it discloses a pole connected to a source of power, because the patent specifies that power lines should extend through the pole and into the luminaire.[99]

90. Kelly Patent at col. 4:28–32.

91. *Id.* at col. 4:35–36.

92. Pratt Invalidity Decl., ¶ 10.

93. Dornfeld Invalidity Decl., ¶ 21.

94. Claim Construction Order at 20.

95. '084 patent at col. 6:50–58; *id.* at col. 9:21–29; *id.* at col. 10:6–14.

96. Kelly Patent at col. 5:27–34.

97. *Id.* at col. 5:4–5.

98. B–K Validity MSJ at 7.

99. Supplemental Opposition to B–K Lighting, Inc.'s Motion for Summary Judgment as to the Validity and Enforceability of B–K Lighting, Inc.'s Patent, Docket No. 157 (Apr. 7, 2008). ("FVC Supp. Opp.") at 5 (citing Declaration David Dornfeld in Support of Fresno Valves & Castings, Inc.'s Supplemental Opposition to B–K Lighting, Inc.'s Motion for Summary Judgment As To Validity and Enforceability ("Dornfeld Supp. Op. Decl."), Docket No. 158 (Apr. 7, 2008), ¶ 4; Kelly Patent at col. 1:28–32.

B–K's expert, by contrast, asserts Kelly does not disclose that the pole couples the apparatus to a power source such as a junction box—only that the device uses electrical power.[100] The conflicting expert testimony as to whether a person of ordinary skill in the art would have understood that the Kelly specification and drawings disclose a pole structurally connected to a power source creates triable issues of fact that cannot be resolved on summary judgment.[101]

B–K also argues, however, that Kelly does not disclose that the upper end of the pole is configured to allow frictional rotation relative to the base member and that it discloses rather fixed mounting of the pole to the base portion.[102] FVC counters that the presence of set screws securing the upper end of the pole to the base portion does not preclude frictional interaction.[103] It proffers its expert's testimony that "if a round structure is centered and seated within a substantially square or rectangular opening, friction will result at all regions or areas of contact," which "will create frictional resistance to rotation." [104] In its claim construction order, the court construed the term "rotationally interacting with" to mean "frictionally rotating relative to the base member." [105] While the testimony of FVC's expert factually substantiates its argument that there is "frictional resistance to rotation" of the pole within the base portion, FVC has adduced no evidence that the pole in Kelly actually rotates within the base portion, as required by claims 3, 12, and 15. The un-controverted evidence adduced by B–K establishes, instead, that the set screws and square opening connecting the pole to the base portion are designed for fixed mounting rather than a rotational connection.[106]

Because the uncontroverted evidence demonstrates that Kelly does not disclose rotation of the "stud member" in the base member, the court finds that Kelly does not anticipate claims 3, 12, and 15.[107] The court therefore grants B–K's motion for summary judgment on the validity of the '084 patent as anticipated and denies FVC's motion for summary judgment of invalidity of the patent to the extent that the motions concern anticipation.

### F. Whether the '084 Claims Are Invalid under 35 U.S.C. § 112

#### 1. Enablement

Under 35 U.S.C. § 112(a), a patent claim is invalid if it is not stated in such "exact terms as to enable any person skilled in the art to which it pertains ... to make and use the same...." 35 U.S.C. § 112(a). "The 'enablement requirement is satisfied when one skilled in the art, after reading the specification, could practice the claimed invention without undue experimentation.'" *Sitrick v. Dreamworks, LLC,* 516 F.3d 993, 999 (Fed.Cir.2008) (quoting *AK Steel Corp. v. Sollac,* 344 F.3d 1234, 1238–39 (Fed.Cir.2003)). "Whether a claim satisfies the enablement requirement ... is a question of law." *Id.* The critical question is what constitutes "undue experimentation." The Federal Circuit

---

**100.** Pratt Invalidity Decl., ¶ 4.

**101.** Cf. *Fed. Cir. Op.,* 375 Fed.Appx. at 32.

**102.** See Kelly Patent at col. 5:41–46 ("After the mounting pole has been inserted into the bore, it is secured in place by set screws").

**103.** *Id.* at 6.

**104.** Dornfeld Supp. Op. Decl., ¶ 5.

**105.** Claim Construction Order at 27.

**106.** *See* Reply in Support of Motion for Partial Summary Judgment as to the Validity and Enforceability of B–K Lighting, Inc.'s Patent ("B–K Validity Reply"), Docket No. 190 (Apr. 14, 2008) at 2 (citing Pratt Invalidity Decl., ¶ 9).

**107.** *See* '084 patent at col. 6:50–58; *id.* at col. 9:21–29; *id.* at col. 10:6–14.

has identified eight factors to be considered in determining whether a disclosure requires undue experimentation:

"(1) the quantity of experimentation necessary, (2) the amount of direction or guidance presented, (3) the presence or absence of working examples, (4) the nature of the invention, (5) the state of the prior art, (6) the relative skill of those in the art, (7) the predictability or unpredictability of the art, and (8) the breadth of the claims." *In re Wands*, 858 F.2d 731, 737 (Fed.Cir.1988).[108]

[15] Although FVC acknowledges that these are the relevant factors,[109] it focuses on the first factor—whether the patent is enabled given the quantity of experimentation required by the description. FVC argues that "undue experimentation" would be required to recreate the taper needed to practice the claimed invention. It relies on the testimony of Case, Counts, and Gillespie, asserting that extensive experimentation would be necessary to achieve the requisite taper. FVC notes that Case testified numerous prototypes of the device were developed over the course of three weeks,[110] that Counts stated the taper was the result of experimentation,[111] and that Gillespie said that experimentation was required to perfect the taper and that he was "very, very shocked" the taper worked.[112]

The testimony of the engineers that is cited by FVC demonstrates that substantial experimentation was required to produce the patented invention. "The fact that some experimentation may be necessary to produce the invention[, however,]

does not render [a] patent invalid for lack of enablement." *Monsanto Co. v. Scruggs*, 459 F.3d 1328, 1338 (Fed.Cir.2006); *see Chiron Corp. v. Genentech, Inc.*, 268 F.Supp.2d 1148, 1161 (E.D.Cal.2002) ("That some experimentation would have been necessary to [practice the patent] does not mean that the parent applications are not enabling"). Indeed, the Federal Circuit has held that " 'patents are not production documents,' " and that " 'the law requires that patents disclose inventions, not mass-production data.' " *CFMT, Inc. v. Yieldup Intern. Corp.*, 349 F.3d 1333, 1339 (Fed.Cir.2003).

The parties' experts dispute the extent to which experimentation would be required to practice the patent. Dornfeld states that "one of ordinary skill in the art could not have constructed the claimed invention without an undue amount of experimentation and research" because the patent does "not disclose the angle of taper or the relative length of the post and opening."[113] Pratt states, by contrast, that "[p]ersons of skill in the mechanical arts in possession of the '084 patent" would have understood that frictional rotational resistance could be achieved between tapered mating surfaces at a range of angles, and that those angles could have been established through routine experimentation.[114] Thus, while the evidence shows that some experimentation was required, the parties' experts disagree as to whether the level of necessary experimentation was "undue" from the perspective of one skilled in the art. B–K suggests, moreover, that the fact that FVC engineer

---

108. See also, e.g., *Automotive Technologies Intern., Inc. v. BMW of North America, Inc.*, 501 F.3d 1274, 1280 (Fed.Cir.2007) (citing the *Wands* factors); *Ormco Corp. v. Align Technology, Inc.*, 498 F.3d 1307, 1327 (Fed. Cir.2007) (same).

109. See B–K Validity MSJ at 6 (citing the *Wands* factors).

110. Case Depo. at 31:12–19, 35:6–10.

111. Counts Depo. at 24:2–11.

112. Gillespie Depo. at 28:3–30:18.

113. Dornfeld Invalidity Decl., ¶ 125.

114. Pratt Invalidity Decl., ¶ 43.

(and former B–K employee) Monte Matts was able to create three dimensional Computer Aided Design ("CAD") renderings of the tapered opening/tapered post interaction shows that the angle was easily discovered.[115]

While it is true that "the ultimate determination of whether one skilled in the art could make and use the claimed invention without undue experimentation is a legal one, it is based on underlying findings of fact." *Warner–Lambert Co. v. Teva Pharm. USA, Inc.*, 418 F.3d 1326, 1337 (Fed.Cir.2005). Where the parties' "conflicting expert reports and/or testimony demonstrate the existence of genuine issues of material fact as to whether [the claims of the patent] are enabled[, s]ummary judgment on this issue [must be] denied." *Snaptrack, Inc. v. Zoltar Satellite Alarm Systems, Inc.*, No. C 01–20291 JW, 2006 WL 1911918, *10 (N.D.Cal. July 11, 2006). Given the conflicting evidence, the court concludes that triable issues of fact as to enablement remain, and that it is not appropriate to enter summary judgment for either party on this issue. *See MEMC Electronic Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 248 Fed. Appx. 199, 204 (Fed.Cir.2007) (Unpub. Disp.) ("In this case, the declarations of the MEMC witnesses create genuine issues of material fact as to whether undue experimentation would be required to design a hot zone to achieve the crystal growth conditions described in the patent and whether such conditions would result in silicon wafers covered by the patent claims").

### 2. Best Mode

The disputed patent claims may also be invalid if they fail to "set forth the best mode contemplated by the inventor for carrying out his invention." *In re Cyclobenzaprine Hydrochloride Extended–Release Capsule Patent*, 676 F.3d 1063, 1084 (Fed.Cir.2012) (citing 35 U.S.C. § 112, ¶ 1 (2006)).[116] "To apply the best mode standard, a court must first 'determine[ ] whether, at the time the patent application was filed, the inventor had a best mode of practicing the claimed invention.'" *AllVoice Computing PLC v. Nuance Communications, Inc.*, 504 F.3d 1236, 1247 (Fed.Cir.2007) (quoting *United States Gypsum Co. v. Nat'l Gypsum Co.*, 74 F.3d 1209, 1212 (Fed.Cir.1996)). "This determination turns on the inventor's own subjective beliefs." *Id.* The analysis also requires the court to determine whether the inventor concealed the best mode from the public. *See Chemcast Corp. v. Arco Indus. Corp.*, 913 F.2d 923, 928 (Fed.Cir. 1990) ("[T]he second part of the analysis [asks] . . . has the inventor 'concealed' his preferred mode from the 'public'?"). Findings of invalidity based on the best mode requirement are rare. *See Bayer AG v. Schein Pharms., Inc.*, 301 F.3d 1306, 1316

---

**115.** *See* Declaration of Monte Matts in Support of FVC's Opening Claim Construction Brief, Docket No. 95–2 (Dec. 18, 2007), ¶ 1.

**116.** The version of the Patent Act currently in effect provides that, although an applicant must disclose the best mode to register a patent, a party to a lawsuit may not rely on an alleged best mode disclosure violation to cancel, invalidate, or have a patent otherwise declared unenforceable. *See In re Cyclobenzaprine*, 676 F.3d at 1084 (citing Leahy–Smith America Invents Act, Pub.L. No. 112–29, sec. 15(a), 125 Stat. 284, 328 (2011)). That provision, however, is inapplicable in this case because it is the product of amendments to the Patent Act that became effective after this action was filed. *Id.* (citing Leahy–Smith America Invents Act, Pub.L. No. 112–29, sec. 15(c), 125 Stat. 284, 328 (2011) (providing that the best mode amendments apply only to actions commenced on or after the effective date of the amendments)). The version of the Patent Act applicable here permits an accused infringer to assert a best mode disclosure violation as a defense. *Id.* (citing 35 U.S.C. § 282, ¶ 2(3) (2006)).

(Fed.Cir.2002) ("In the history of this court and our predecessor courts, we have held claims invalid for failure to satisfy the best mode requirement on only seven occasions. As we will see, these cases involved either failure to disclose a preferred embodiment, or else failure to disclose a preference that materially affected making or using the invention").

■ The first prong of the test turns on a subjective inquiry as to whether the inventor had a best mode of practicing the invention at the time the patent application was filed. *See Pfizer, Inc. v. Teva Pharms. USA, Inc.*, 518 F.3d 1353, 1364 (Fed.Cir.2008) ("The first prong is subjective and focuses on the inventor's state of mind at the time the application is filed"). FVC asserts that, for the same reason the patent is not enabled, it does not meet the best mode requirement. Essentially, FVC contends that B–K knew the angle of the taper that made it possible to practice the invention and failed to disclose it. FVC

has not, however, adduced clear and convincing evidence supporting this assertion.

FVC concedes that Hagen stated he did not know the angle of the taper, and was not personally responsible for determining it.[117] Nonetheless, as discussed in greater detail *infra*, it contends that *someone* at B–K had to know the angle of the taper at the time of invention. The court infers that FVC maintains Gillespie and Case knew the angle of the taper and should have been named as inventors. This argument fails for two reasons. First, as addressed *infra*, the court cannot conclude on the evidence before it that Hagen was improperly named sole inventor of the patent. As a consequence, FVC's admission that Hagen did not know the angle of the taper conclusively demonstrates that he was not subjectively aware of a "best mode" of practicing the invention.[118]

Moreover, even if the court were to consider Gillespie and Case co-inventors, FVC has not shown that they knew of a best

---

**117.** FVC Supp. Op. at 10 (citing Hagen Depo. at 67:16–68:14; 73:7–9).

**118.** FVC contends that the patentee was required to disclose a "best mode" for practicing the invention. This contention simply repackages FVC's enablement argument, which the court has already addressed. To the extent FVC asserts the court may find the patent invalid for failure to comply with the best mode requirement whether or not the inventor knew of a "best mode" for practicing the patented invention at the time of filing, the court believes the argument is erroneous. The Federal Circuit has clearly held that the "best mode" analysis involves a two-step process. See, e.g., *Young Dental Mfg. Co., Inc. v. Q3 Special Products, Inc.*, 112 F.3d 1137, 1144 (Fed.Cir.1997) ("Two factual inquiries underlie the determination of whether a patent complies with the best mode requirement"). While the adequacy of the inventor's disclosure of a best mode in the patent is relevant to the second inquiry, *see Joy MM Delaware, Inc. v. Cincinnati Mine Machinery, Co.*, 497 Fed.Appx. 970, 974 (Fed.Cir.2012) (Unpub. Disp.), the court proceeds to the second inquiry only if the first inquiry reveals that the inventor subjectively had a best mode of practicing the claimed invention. See, e.g., *Bruning v. Hirose*, 161 F.3d 681, 686–87 (Fed. Cir.1998) (concluding that there had been no best mode requirement violation because the inventor was not subjectively aware of a best mode for practicing the claimed invention); *Gargoyles, Inc. v. United States*, 113 F.3d 1572, 1582 (Fed.Cir.1997) ("Since the government did not prove that Burns knew of and withheld the best mode, there can be no violation of section 112 ¶ 1," citing *Chemcast Corp. v. Arco Indus. Corp.*, 913 F.2d 923, 926 (Fed. Cir.1990) (stating that the sole purpose of the best mode requirement " 'is to restrain inventors from applying for patents while at the same time concealing from the public preferred embodiments of their inventions which they have in fact conceived' ")); see also *Glaxo Inc. v. Novopharm Ltd.*, 52 F.3d 1043, 1050 (Fed.Cir.1995) ("the specificity of disclosure required to comply with the best mode requirement must be determined by the knowledge of facts within the possession of the inventor at the time of filing the application").

mode they failed to disclose. Although it appears from Gillespie's and Case's testimony that they determined an angle that made it possible to practice the invention, it is not clear that they considered this angle the "best mode." Indeed, Case testified that the angle was chosen "arbitrarily" and was never changed. Thus, viewed in the light most favorable to B–K, the evidence shows that Case and Gillespie were aware of *one* angle that made it possible to practice the invention, but did not know this angle was the "best mode" of practicing the invention.

FVC has adduced no evidence that Hagen, the named inventor at the time of the patent application, or Case and Gillepsie, the purported co-inventors, were subjectively aware of a best mode of practicing the tapered post/opening interaction.[119] Because FVC has not established that the inventor of the patented device subjectively knew of a best mode of practicing the invention at the time of application, the court grants B–K's motion for summary judgment on this issue.

### 3. Indefiniteness

A patent claim may also be invalid under 35 U.S.C. § 112(2) for indefiniteness when the scope of the claims are not "sufficiently definite to inform the public of the bounds of the protected invention." *Halliburton Energy Services, Inc. v. M–I LLC*, 514 F.3d 1244, 1249 (Fed.Cir.2008). In its original motion for summary judgment, FVC asserted that claims 5 and 24 of the '084 patent were invalid for indefiniteness. The court's prior order found claims 5 and

24 invalid for obviousness, and the Federal Circuit affirmed.[120] The court concludes, therefore, that it is unnecessary to consider the parties' arguments concerning indefiniteness.

### G. Inventorship

■■ FVC argues that the court should enter judgment of unenforceability of the patent-in-suit based on incorrect naming of the inventors.[121] B–K argues that it is entitled to summary judgment because FVC has failed to produce clear and convincing evidence that the '084 patent is unenforceable because B–K failed to name the correct inventors.[122] FVC does not link its inventorship argument to specific patent claims; instead, it contends that Hagen was incorrectly listed as the sole inventor because Gillepsie and/or Case were co-inventors of the tapered post/opening interaction.[123]

■■■ "A patent is invalid if more or fewer than the true inventors are named." *Gemstar–TV Guide Intern., Inc. v. Int'l Trade Commission*, 383 F.3d 1352, 1381 (Fed.Cir.2004). Because patents are presumed valid, "there follows a presumption that the named inventors on a patent are the true and only inventors." *Id.* (citing *Hess v. Advanced Cardiovascular Sys., Inc.*, 106 F.3d 976, 980 (Fed.Cir.1997)). On a motion for summary judgment, the party challenging a patent must prove by clear and convincing evidence that the invention was made by another inventor. *Fox Group, Inc. v. Cree, Inc.*, 700 F.3d

119. The court's conclusion is bolstered by the cursory treatment given this issue in FVC's brief. FVC devotes less than half a page of analysis to its argument, instead incorporating its enablement argument by reference. (See Supplemental Opposition to B–K Lighting Inc.'s Motion for Summary Judgment As To The Validity and Enforceability of B–K Lighting, Inc.'s Patent ("FVC Validity Opp."), Docket No. 157 (Apr. 7, 2008), at 10.)

120. *Fed. Cir. Op.*, 375 Fed.Appx. at 28–29; *id.* at 32.

121. FVC Supp. Br. at 10.

122. B–K Supp. Br. at 4.

123. As noted earlier, the tapered post innovation is the only arguably new element in the patent.

1300, 1303–04 (Fed.Cir.2012). The *Gemstar* court summarized the law regarding inventorship as follows:

"When two or more persons jointly invent, they must jointly apply for a patent. 35 U.S.C. § 116 (2000). Co-inventors must so apply 'even though ... they did not physically work together or at the same time, ... each did not make the same type or amount of contribution, or ... each did not make a contribution to the subject matter of every claim of the patent.' *Id.* § 116. Because conception is the touchstone of inventorship, each 'joint inventor must contribute in some significant manner to the conception of the invention.' *Fina Oil & Chem. Co. v. Ewen,* 123 F.3d 1466, 1473 (Fed.Cir.1997); see also *Ethicon, Inc. v. U.S. Surgical Corp.,* 135 F.3d 1456, 1460 (Fed.Cir.1998). 'Conception is the formation in the mind of the inventor, of a definite and permanent idea of the complete and operative invention, as it is hereafter to be applied in practice.' *Hybritech Inc. v. Monoclonal Antibodies, Inc.,* 802 F.2d 1367, 1376 (Fed.Cir.1986) (internal quotation marks omitted). 'An inventor may solicit the assistance of others when perfecting the invention without 'losing' any patent rights.' *Trovan, Ltd. v. Sokymat SA,* 299 F.3d 1292, 1302 (Fed.Cir.2002).

Because co-inventors need not contribute to the subject matter of every claim of the patent, inventorship is determined on a claim-by-claim basis. *Id.* Moreover, the inventorship analysis, like an infringement or invalidity analysis, first requires the construction of each disputed claim to determine the subject matter encompassed thereby. *Id.* The second step is a comparison of the alleged contributions of each asserted co-inventor with the subject matter of the correctly construed claim to determine whether the correct inventors were named. *Id.; Ethicon,* 135 F.3d at 1460–61.

Alleged co-inventors must establish their co-inventorship by facts supported by clear and convincing evidence. *Ethicon,* 135 F.3d at 1461. To meet the burden of clear and convincing evidence, the alleged co-inventors must prove their contribution to the conception of the invention with more than their own testimony concerning the relevant facts. *Trovan,* 299 F.3d at 1302 (citing *Price v. Symsek,* 988 F.2d 1187, 1194 (Fed.Cir. 1993)). Whether the co-inventor's testimony has been sufficiently corroborated is evaluated under a 'rule of reason analysis,' which requires that an 'evaluation of all pertinent evidence must be made so that a sound determination of the credibility of the inventor's story may be reached.' *Price,* 988 F.2d at 1195. Corroborating evidence may take many forms. Reliable corroboration preferably comes in the form of records made contemporaneously with the inventive process. *Sandt Tech., Ltd. v. Resco Metal & Plastics Corp.,* 264 F.3d 1344, 1350–51 (Fed.Cir.2001). Circumstantial evidence of an independent nature may also corroborate. *Trovan,* 299 F.3d at 1303. Additionally, oral testimony from someone other than the alleged inventor may corroborate. *Id.*" 383 F.3d at 1381–82.

■ The Federal Circuit has held that " '[i]ncorrect inventorship is a technical defect in a patent that may be easily curable.' " *Winbond Electronics Corp. v. Int'l Trade Comm'n,* 262 F.3d 1363, 1371 (Fed. Cir.2001). The Federal Circuit has thus disapproved of determinations that a patent is invalid for failure to join co-inventors. "[I]f a patentee can demonstrate that inventorship can be corrected as provided by [35 U.S.C. § 256], a district court must order correction of the patent, thus

saving it from being rendered invalid." *Pannu v. Iolab Corp.,* 155 F.3d 1344, 1350 (Fed.Cir.1998). The only condition under which correction is not appropriate is where the failure to join the inventors was accompanied by deceptive intent. *See Per-Septive Biosystems, Inc. v. Pharmacia Biotech, Inc.,* 225 F.3d 1315, 1318 (Fed.Cir. 2000) (upholding the district court's decision not to correct inventorship where it found that the "named inventors had omitted the unnamed inventors with deceptive intent").

In its original summary judgment briefing, FVC argued that at a minimum, Gillespie and Case were co-inventors of the '084 patent. FVC contends it has adduced "clear and convincing evidence" of their co-inventor status, including Gillespie's testimony that it was fair to say Hagen did not provide any input with respect to the actual design of the tapered element; his testimony that he was familiar with tapers from his days as a machinist; and his testimony that he developed the details of the taper design.[124] FVC asserts that this testimony is corroborated by Case's testimony that Hagen provided little direction regarding the design of the device and that each element of the device protected by the '084 patent was designed by some combination of him and Gillespie.[125] It also contends that Gillespie's and Case's testimony about their role in the design process is corroborated by entries in Case's engineering notebooks, which he prepared at the time the claimed invention was being developed.[126] FVC asserts that the evidence ultimately establishes that it was not Hagen who did the work to find a functional angle and length for the taper, but Gillespie and Case.

■■■ FVC's evidence strongly suggests that Gillespie and Case, rather than Hagen, were primarily responsible for discovering a functional angle and length for the taper. Inventorship, however, is linked specifically to the claims of the patent. In other words, "the legal scope of a claim must be known before the contributions of an alleged co-inventor can be compared to that claim to determine whether the correct inventors were named." *Eli Lilly & Co. v. Aradigm Corp.,* 376 F.3d 1352, 1360 (Fed.Cir.2004). It follows that, where the innovations and design claimed by a co-inventor are not disclosed by any of the claims in the patent, there can be no claim for co-inventorship. *See Board of Educ. ex rel. Bd. of Trustees of Florida State University v. American Bioscience, Inc.,* 333 F.3d 1330, 1342 (Fed.Cir.2003) (finding that innovations outside the claims of a patent did not give rise to co-inventorship). Here, the angle and length of the taper are not disclosed in either the '084 patent's claims or the patent specification. Any patentable innovation performed by Case and Gillespie regarding the angle or length of the taper therefore falls outside the patent claims and does not bear on inventorship as a consequence. *Id.*

■■■ FVC's evidence also suggests that Gillespie and Case, rather than Hagen, were responsible for reducing the taper to practice. Courts have recognized, however, that those who work to reduce a patent to practice are not necessarily co-inventors. "[D]epending on the scope of a patent's claims, one of ordinary skill in the art who simply reduced the inventor's idea to practice is not necessarily a joint inventor." *Ethicon,* 135 F.3d at 1460. This

---

**124.** FVC Validity Opp. at 13–14.

**125.** Case Depo. at 30:20–51:13.

**126.** FVC Validity Opp. at 16; Declaration of Irene Yang in Support of Defendant's Supplemental Opposition to B–K Lighting, Inc.'s Motion for Summary Judgment As To The Validity and Enforceability of B–K Lighting, Inc.'s Patent ("Yang Decl."), Docket No. 161, Exh. 9 at 5 (referring to taper feature).

rule derives from the nature of conception. "Conception is the formation in the mind of the inventor, of a definite and permanent idea of the complete and operative invention." *Id.* (quoting *Hybritech, Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1376 (Fed.Cir.1986) (internal quotations marks omitted)). "An idea is sufficiently 'definite and permanent' when 'only ordinary skill would be necessary to reduce the invention to practice, without extensive research or experimentation.'" *Id.* (quoting *Burroughs Wellcome Co. v. Barr Laboratories, Inc.*, 40 F.3d 1223, 1228 (Fed.Cir.1994)). An engineer or employee who uses ordinary skill to reduce an idea to practice is not, therefore, a co-inventor, even if some research and experimentation are required. The testimony of Case and Gillespie and Case's notebook entries concerning the design of the taper show that Gillespie and Case were actively involved in reducing the idea of the taper to practice. The evidence does not demonstrate that those men first conceived the idea of using a taper to produce frictional pivoting, however.

B–K has adduced evidence that Hagen was the individual who conceived of the taper. Gillespie testified that Hagen was the "conceptual guy" who developed the product concepts.[127] According to Gillespie, Hagen "storyboard[ed] his ... concepts, and then provide[d] them to [the engineers] for implementation." [128] Hagen

similarly testified that the tapered post/opening interaction claimed in the '084 patent "was [his] idea." [129]

FVC, for its part, has adduced some evidence suggesting that the idea of using a taper did not originate with Hagen. Case testified that he and/or Gillepsie came up with the idea for the taper, not Hagen.[130] Case however, could not identify whether he or Gillepsie conceived of the taper.[131] He acknowledged, moreover, that Gillespie could have presented the concept of a taper to him, and he could not say with any certainty that Hagen had not given Gillespie the idea.[132] Given these ambiguities, Case's testimony does not constitute "clear and convincing evidence" that the concept of the tapered post/opening interaction originated either with him or with Gillespie. Similarly, Case's notebook entries demonstrate only that he worked on refining the design of a taper; they do not identify who conceived of the idea for the taper.[133]

B–K argues that Gillespie's testimony as to who conceived of the tapered post/tapered opening concept is also "equivocal at best." It notes that Gillespie testified the word "taper" may have come from Hagen, and that Gillespie never affirmatively testified that the idea of the tapered opening/post originated with someone other than Hagen (i.e., him or Case).[134] Because he does not clearly state that a specific

127. B–K Validity MSJ at 19 (citing Gillespie Depo. at 88:16–21).

128. *Id.* (citing Gillespie Depo. at 92:10–20).

129. Hagen Depo. at 69:23.

130. B–K Invalidity MSJ at 21 (citing Case Depo. at 108:1–6). B–K seeks to undermine the credibility of Case's testimony, noting that he left his job at B–K after "repeated verbal abuse from Hagen" (Case Depo. at 15:9–20), and that his admission he is "pretty biased against B–K Lighting," and does not want to

see Hagen's name on another patent. (*Id.* at 91:14–20). Whether Case is biased or his testimony reliable is not a question the court can resolve at the summary judgment stage.

131. *Id.* (citing Case Depo. at 108:7–9; *id.* at 108:10–16).

132. *Id.* (citing Gillespie Depo. at 32:9–13).

133. See, e.g., Yang Decl., Exh. 9 at 5.

134. *Id.* (citing Gillespie Depo. at 26:7–28, 92:28–35, 94:24–29).

person other than Hagen conceived of the tapered post/opening interaction, Gillespie's testimony also does not constitute "clear and convincing evidence" that the patent-in-suit names the incorrect inventor.

In sum, although FVC has adduced evidence suggestive of the fact that there inventors other than Hagen, it has not adduced sufficient evidence of a clear and convincing nature to raise triable issues regarding that fact. *See Anderson,* 477 U.S. at 252, 106 S.Ct. 2505 ("[W]e are convinced that the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits"); *id.* at 254, 106 S.Ct. 2505 ("[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden.... The question ... is whether a jury could reasonably' find either that the plaintiff proved his case by the quality and quantity of evidence required by the governing law or that he did not. Whether a jury could reasonably find for either party, however, cannot be defined except by the criteria governing what evidence would enable the jury to find for either the plaintiff or the defendant: It makes no sense to say that a jury could reasonably find for either party

without some benchmark as to what standards govern its deliberations and within what boundaries its ultimate decision must fall, and these standards and boundaries are in fact provided by the applicable evidentiary standards"). Consequently, FVC has failed to satisfy its burden on summary judgment, *Hess,* 106 F.3d at 980; *Fox Group,* 700 F.3d at 1303–04, and the court grants B–K's motion for summary judgment on FVC's false inventorship claim.[135]

**H. Whether FVC Has Stated a Defense or Counterclaim Based on Inequitable Conduct**

"[I]nequitable conduct includes affirmative misrepresentation of a material fact, failure to disclose material information, or submission of false material information, coupled with an intent to deceive." *Pharmacia Corp. v. Par Pharm., Inc.,* 417 F.3d 1369, 1373 (Fed.Cir.2005). "In cases where the omission or misrepresentation is highly material, 'less evidence of intent will be required in order to find that inequitable conduct has occurred.'" *eSpeed, Inc. v. BrokerTec USA, L.L.C.* 480 F.3d 1129, 1135 (Fed.Cir.2007) (quoting *PerSeptive,* 225 F.3d at 1319). "Once a district court has found a threshold level of both materiality and intent to deceive, the district court must balance the evidence to deter-

---

**135.** Because FVC has not adduced sufficient evidence of a clear and convincing nature to raise triable issues of fact as to whether Case or Gillespie was a co-inventor of the tapered post/opening, the court need not consider whether Hagen intended to deceive the patent office by failing to name Gillespie and/or Case as a co-inventor. FVC, however, has failed to adduce evidence of intent to deceive. *See Therasense, Inc. v. Becton, Dickinson and Co.,* 649 F.3d 1276, 1291 (Fed.Cir.2011) ("to meet the clear and convincing evidence standard, the specific intent to deceive must be the single most reasonable inference able to be drawn from the evidence"). FVC has prof-

fered no evidence that either Hagen or B–K had a motive to omit Case and Gillespie as inventors. *See Advanced Magnetic Closures, Inc. v. Rome Fastener Corp.,* 607 F.3d 817, 831 (Fed.Cir.2010) (considering whether motive evidence gave rise to an inference of intent to deceive). Case testified that he orally agreed at the outset of his employment with B–K "that any patents or other intellectual property would be assigned to B–K." (Case Depo. at 13.) Consequently, it appears that B–K would have had little incentive to omit Case. FVC, moreover, has adduced no evidence that Hagen had a motive to omit either man.

mine if equity should render the patent unenforceable." *Id.*

"As with [fraud] claims, the inequitable conduct affirmative defense falls within the strictures of Rule 9(b)." *Multimedia Patent Trust v. Microsoft Corp.,* 525 F.Supp.2d 1200, 1211 (S.D.Cal.2007); *see Central Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Solutions, P.C.,* 482 F.3d 1347, 1356 (Fed.Cir.2007) ("We have held that 'inequitable conduct, while a broader concept than fraud, must be pled with particularity,'" quoting *Ferguson Beauregard/Logic Controls, Inc. v. Mega Sys., LLC,* 350 F.3d 1327, 1344 (Fed.Cir. 2003)); see also *Exergen Corp. v. Wal-Mart Stores, Inc.,* 575 F.3d 1312, 1326–27 (Fed.Cir.2009) (inequitable conduct counterclaim and defense must be pled with particularity under Rule 9(b)). Where not pled with adequate particularity, an inequitable conduct counterclaim must be dismissed, and an inequitable conduct defense stricken, *see Multimedia Patent Trust,* 525 F.Supp.2d at 1211 ("Therefore, an inequitable conduct defense to a patent infringement claim may be stricken pursuant

to Rule 12(f) for failure to plead with particularity"), and a counterclaim dismissed, FED.R. CIV.PROC. 12(b)(6).

██ B–K argues that FVC has not adequately pled a defense or counterclaim for inequitable conduct. A review of FVC's answer, affirmative defenses and counterclaims does not reveal any defense or counterclaim that is specifically identified as based on "inequitable conduct." [136] It is well established that a plaintiff may not advance a new claim or defense at the summary judgment stage without seeking leave to amend.[137] See, e.g., *Hurlbert v. St. Mary's Health Care Sys., Inc.,* 439 F.3d 1286, 1296–97 (11th Cir.2006) ("Hurlbert's complaint ... provided no notice whatsoever that he believed he was entitled to leave on this basis.... We have previously held that Rule 8(a)'s liberal pleading standard is inapplicable once discovery has commenced, and that '[a]t the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed. R.Civ.P. 15(a)'"); *Gentry v.*

---

**136.** See Answer, ¶ 37 (alleging an affirmative defense of invalidity for failure to name the correct inventor but not alleging an affirmative defense based on inequitable conduct). FVC alleges, in its counterclaim, that the patent is "unenforceable for improperly and with deceptive intent naming the [in]correct inventor(s)." (Answer, ¶ 52.) Read with extreme liberality, the court could construe this allegation as an attempt to assert an inequitable conduct counterclaim. By neglecting to plead specific facts giving rise to an inference of deceptive intent, however, the counterclaim fails to meet the requirements of Rule 9(b). The court, moreover, has concluded that FVC has failed to adduce sufficient evidence of a clear and convincing nature to raise triable issues concerning the fact that B–K incorrectly named the inventor of the patent and did so with deceptive intent. Thus, even if this portion of FVC's answer were construed as an inequitable conduct counterclaim, the court would grant summary judgment in B–K's favor on the claim for the

reasons stated in the court's discussion of the inventorship claim.

**137.** FVC, in an apparent afterthought, suggests that if the court finds its complaint insufficiently pled an inequitable conduct claim or defense, the court should give it leave to amend to plead with the particularity required by Rule 9(b). (*See* FVC Validity Opp. at 25.) FVC suggests that its request should be evaluated under Rule 15(a). The court disagrees. The deadline for the filing of motions to amend the pleadings has long since passed. To the extent FVC seeks to amend its complaint to add a new claim at this late stage, it must satisfy the more stringent "good cause" requirement of Rule 16. Had FVC filed a proper motion to amend its complaint under Rule 16, the court might have considered it. The court did not, however, address the addition of an inequitable conduct defense or counterclaim, because such a motion was never properly made.

*Summit Behavioral Healthcare,* 197 Fed. Appx. 434, 442 (6th Cir.2006) (Unpub. Disp.) ("Having proceeded through discovery without amending (or seeking to amend) his complaint to reflect that fundamental change, Gentry is not permitted to raise it in the midst of summary judgment"); *see also Wordtech Sys., Inc. v. Integrated Networks Solutions, Inc.,* 609 F.3d 1308, 1322 (Fed.Cir.2010) ("Leave to amend pleadings after the trial court enters a final scheduling order requires good cause," citing *Coleman v. Quaker Oats Co.,* 232 F.3d 1271, 1294 (9th Cir.2000)). Cf. *Haberman v. Gerber Prods., Co.,* 236 Fed. Appx. 592, 601 (Fed.Cir.2007) (district court did not abuse its discretion by denying defendant's motion for leave to assert new counterclaims related to unenforceability and inequitable conduct, where motion was filed the day before the summary judgment deadline).

Accordingly, the court grants summary judgment in favor of B–K to the extent that FVC seeks to assert an inequitable conduct defense or counterclaim.

### I. Whether FVC's Devices Infringe the Remaining Patent Claims

FVC also moves for summary judgment of non-infringement. Because the court finds that there are triable issues of fact concerning the validity of the remaining patent claims—claims 3, 12, 15, 18, 19, 21 and 22—it must evaluate whether FVC is entitled to summary judgment of non-infringement of those claims.[138]

### 1. Whether The Court Should Strike Portions of B–K's Expert Report

As a preliminary matter, the court considers whether it should strike any or all of B–K's expert's report concerning infringement. FVC seeks such relief, asserting that B–K's expert discusses new infringement claims that were not included in B–K's preliminary infringement contentions or its responses to FVC's contention interrogatories.[139] FVC argues that B–K's attempt to introduce new infringement contentions violates the court's case management order and the rules of discovery. Specifically, FVC contends that B–K's assertion of new infringement theories is an "end run" around the court's October 9, 2007 scheduling order. It notes that B–K has not attempted to amend its infringement contentions, and argues that there would be no "good cause" for amendment if B–K moved to do so now.

B–K counters that it has not violated the scheduling order or any local rule.[140] It asserts that the requirement that a party amend its preliminary contentions to assert new infringement claims comes from the local patent rules of the Northern District of California, which are not controlling in this district and which the court did not expressly adopt in this case. It contends, as a result, that the cases cited by FVC, which address violations of local patent rules, are inapposite.

B–K is correct that the local patent rules of the Northern District of California do not apply in this district. The Northern District's local patent rules are only relevant to the parties' obligations in this case to the extent they were incorporated in the court's October 9 order. To the extent B–K's conduct in this litigation has been non-compliant with the court's order(s), the court has the inherent authority

---

**138.** B–K alleges that FVC infringes all 19 claims of the '084 patent. Because the Federal Circuit affirmed the court's judgment of invalidity as to claims 5, 7, 8, and 23–31, only infringement of the remaining claims need be addressed.

**139.** Motion to Strike B–K Lighting, Inc.'s Expert Report Re Infringement, Docket No. 172 (Apr. 7, 2008).

**140.** Opposition to Motion to Strike ("MTS Opp."), Docket No. 195 (Apr. 14, 2008).

and authority under the Federal Rules of Civil Procedure to take appropriate action. *See Computer Acceleration Corp. v. Microsoft Corp.,* 503 F.Supp.2d 819, 821 (E.D.Tex.2007) ("A court has the inherent power to enforce its scheduling orders and to impose sanctions.... Deciding whether infringement contentions should be struck is similar to deciding whether evidence should be excluded for discovery violations. It is also akin to deciding whether the pleading deadlines of a scheduling order should be extended," citing FED.R.CIV. PROC. 16(f); *O2 Micro Int'l Ltd. v. Monolithic Power Sys.,* 467 F.3d 1355, 1363 (Fed.Cir.2006)). Similarly, to the extent there has been a discovery violation, the court has authority to take action under the Federal Rules of Civil Procedure.

Rule 37 provides that "[i]f a party ... fails to obey an order to provide or permit discovery ... the court where the action is pending may issue further just orders ... prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters as evidence." FED. R.CIV.PROC. 37(b)(2); *In re Vehicle Tracking and Sec. Sys. ('844) Patent Litig.,* MDL No. 11–2249 (DWF/SER), 2012 WL 3776463, *2 (D.Minn. Aug. 30, 2012) (a court can, pursuant to Rule 37, strike subsequent contentions not included in earlier infringement disclosures).

In its October 9 order, the court directed B–K to disclose the patent claims it asserted and its preliminary infringement contentions "in order to assist the parties in narrowing the focus of their dispute." The order referenced the local patent rules of the Northern District of California and the Eastern District of Texas. The court's order cited *Townshend Intellectual Prop., LLC v. Broadcom Corp.,* No. C 06–05118 JF (RS), 2007 WL 1994158, *1 (N.D.Cal. July 5, 2007), noting that in that case, the court directed the party claiming infringe-ment to tie the asserted patent claims to infringing products prior to claim construction "to forestall the prospect that infringement theories transform dramatically" through the course of litigation. The court thus made it clear that the purpose of the October 9 order was the same as the purpose of the local patent rules of the Northern District of California and the Eastern District of Texas—"to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed," to "ensure that litigants put all their cards on the table up front," and "to allow the defendant to pin down the plaintiff's theories of liability ... thus confining discovery and trial preparation to information that is pertinent to the theories of the case." *CBS Interactive, Inc. v. Etilize, Inc.,* 257 F.R.D. 195, 203 (N.D.Cal. 2009) (quoting *O2 Micro,* 467 F.3d at 1365); see also *Motorola, Inc. v. Analog Devices, Inc.,* No. 1:03–CV–131, 2004 WL 5633736, *1 (E.D.Tex. Apr. 20, 2004) ("The requirement in issue in this case, that a party state it[s] preliminary infringement contentions shortly after the initial case management conference[,] is specifically designed to require parties to crystalize their theories of the case, and to prevent a 'shifting sands' approach to patent litigation.... Allowance of continuous amendments to infringement contentions and claim constructions 'would encourage ... vexatious shuffling of positions ...,' " quoting *LG Elecs. Inc. v. Q–Lity Computer Inc.,* 211 F.R.D. 360, 367 (N.D.Cal. 2002)).

As recognized by another court in this district, the purpose of ordering a party to provide preliminary infringement contentions is to require that "the patentee ... fish or cut bait with respect to its specific theory of infringement, ... [and] to ... clearly identify and explain how the ... accused product infringes upon specific claims for the patent-in-suit." *Diagnostic*

*Sys. Corp. v. Symantec Corp.,* Nos. SACV 06–1211 DOC (ANx), SACV 07–960 DOC (ANx), 2009 WL 1607717, *5 (C.D.Cal. June 5, 2009). To permit B–K to assert new infringement contentions after the patent claims have been construed and discovery tailored to the theories presented in the initial infringement contentions has closed would defeat the objectives identified in the court's October 9 order. Cf. *MIT v. Abacus Software,* No. 5:01–CV–344–DF–CMC, 2004 WL 5586072, *5 (E.D.Tex. Sept. 10, 2004) (refusing to allow plaintiffs to add new infringement contentions as fact discovery was coming to a close, and listing examples of courts refusing to allow parties to add additional infringement contentions after claim construction and during briefing on motions for summary judgment, citing *E–Pass Techs. Inc. v. 3Com Corp.,* 222 F.Supp.2d 1157 (N.D.Cal.2002); *JSR Corp. v. Tokyo Ohka Kogyo Co., Ltd.,* No. C 99–20156 JW, 2001 WL 1812378, *5 (N.D.Cal. Sept. 13, 2001)).

B–K argues that its infringement contentions have remained unchanged since it submitted its preliminary contentions. It asserts that it has always identified the mating, tapered annular structures on the accused products as the structures that infringe the first resistance means limitation of the '084 patent. B–K's expert report and brief in opposition to summary judgment, however, identify two different pairs of tapered post/opening structures that purportedly infringe the first resistance means, while B–K's preliminary contentions identified only one.[141]

B–K's preliminary contentions identified the purportedly infringing "tapered opening" as an "annular groove" in the "lower member," and the infringing "tapered post" as "a pair of concentric ridges (or either one of them), that project from the upper member."[142] B–K's opposition to FVC's motion to strike its expert report, on the other hand, identifies the "tapered post" in FVC's products as "the interior surface of the 'annular groove' on the lower member," and it locates the "tapered opening" in the upper support member.[143] As stated, B–K's expert report and summary judgment brief identify both.

The second post/opening pair described in B–K's opposition to the motion to strike, as well as in its expert's report and summary judgment brief is not the allegedly infringing opening and post identified in B–K's preliminary contentions. The second "opening" identified by B–K is not an "annular groove in the lower member ('base member')"; it is located in the support member.[144] The second "post" identified by B–K is not the infringing "post" described in its preliminary contentions;[145] the groove surface is located on the base member.[146]

In its October 9 order, the court directed B–K to submit preliminary infringement contentions "identifying specifically *where each element of each asserted claim is found within each of FVC's accused product(s) or device(s)* including for each element that B–K contends is governed by 35 U.S.C. § 112, *the identity of the structure, act or material in the product that performs the claimed function.*"[147] B–K

**141.** Compare Opposition to Motion for Summary Judgment of No Infringement ("Infringement Opp."), Docket No. 170 (Apr. 7, 2008), at 15 with Mathiowetz Decl., Exh. 7 ("Plaintiff's Preliminary Contentions").

**142.** Plaintiff's Preliminary Contentions at 13.

**143.** MTS Opp. at 2–3.

**144.** Plaintiff's Preliminary Contentions at 13.

**145.** *Id.*

**146.** See Infringement Opp. at 15–16.

**147.** Disclosure Order at 2 (emphasis added).

thus contradicts both the letter and the spirit of the October 9 order by arguing that its infringement contentions are unchanged, while at the same time contending that infringement of the first resistance means can be found in locations and structures in FVC's devices not identified in its those contentions.

 Courts accord parties a "modest degree of flexibility, at least near the outset," to amend their contentions. *Tessera, Inc. v. Adv. Micro. Devices, Inc.,* No. C 05–4063 CW, 2007 WL 1288199, *2 (N.D.Cal. Apr. 30, 2007). Thus, a court may allow a party to amend its preliminary contentions upon a showing of good cause. *Id.* B–K, however, did not move to amend or supplement its preliminary contentions to encompass an infringement claim based on the second post/opening pair it now cites as evidence of infringement.[148] In its preliminary infringement contentions, B–K stated that it "reserved the right to supplement [its] disclosure after the Court construe[d] the claims of the '084 patent." At no time did it attempt to supplement its infringement contentions prior to submitting an expert report that identifies, in part, a new infringement theory.[149]

 FVC argues that B–K also did not disclose the second post/opening pair in its answers to contention interrogatories. Under Rule 26(e)(1), a party must "supplement or correct its [initial] disclosure[s] or [discovery] response[s] ... in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." FED.R.CIV.PROC. 26(e)(1). A party's failure to supplement answers to interrogatories in a timely fashion can be grounds for exclusion of the undisclosed information. *See Woods v. DeAngelo Marine Exhaust, Inc.,* 692 F.3d 1272, 1280 (Fed.Cir.2012) ("Rule 26 imposes an obligation on parties to conduct a reasonable inquiry into the factual basis of their discovery responses and requires that a party who responded to an interrogatory ... supplement or correct its disclosure or response ... in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect.... Indeed, the district court has discretion, when circumstances warrant, to exclude evidence not produced in compliance with a proper discovery request"). Thus, if B–K failed to disclose the second post/opening pair in its answers to contention interrogatories, and failed to supplement those answers under Rule 26(e), the court can in its discretion strike those portions of B–K's expert report on infringement that reference the second pair. *See Hancock v. Hobbs,* 967 F.2d 462, 468 (11th Cir.1992) (district court properly struck expert's affidavit filed in support of opposition to motion for summary judgment under to Rule 26(e), where plaintiff failed to provide a timely supplement to answers to interrogatories with the expert's identity).

FVC served contention interrogatories on B–K on November 22, 2006, pursuant to Rule 33.[150] Interrogatory No. 6 asked that B–K "state with particularity the structure which corresponds to each element of each asserted claim" of infringement.[151] In its

---

148. See Mathiowetz Decl., ¶ 8.

149. Plaintiff's Preliminary Contentions at 2.

150. Declaration of Duane H. Mathiowetz in Support of Fresno Valves & Castings, Inc.'s Motion to Strike B–K Lighting, Inc.'s Expert Report re Infringement, Docket No. 173 (Apr. 7, 2008) ("Mathiowetz MTS Decl."), Exh. 1.

151. *Id.*

first response to interrogatories, B–K did not identify the first resistance means as a basis for its infringement claims at all.[152] In its supplemental response, B–K asserted infringement of the first resistance means and identified the structures infringing that element as a "tapered opening" comprised of "an annular groove in the lower member ("base member") of the Vision 3 product sample" and a "tapered post" comprised of "a pair of concentric ridges (or either one of them), received by and coaxialwith the annular groove, that project from the upper member ("support member").[153] It does not appear that B–K ever supplemented its responses to FVC's interrogatories to identify the second post/opening pair found in FVC's devices as structures that infringed the first resistance element.

Both because B–K did not disclose the second post/opening pair in its preliminary infringement contentions and because it did not disclose the second pair in its answers to contention interrogatories or any Rule 26(e) supplement to those answers, the court grants FVC's motion to strike those portions of Pratt's expert report that discuss the second post/opening pair.[154] Because B–K did not supplement or amend its infringement contentions or its answers to interrogatories, and because the action has been litigated on the basis of the original infringement contentions and interrogatory responses B–K provided, the court declines to consider the new second post/opening that allegedly infringes the '084 patent. *See O2 Micro,* 467 F.3d at 1369–70 (district court did not abuse its discretion in limiting plaintiff to

the infringement theory it set forth in its preliminary contentions and granting summary judgment); *Woods,* 692 F.3d at 1280 (failure to supplement under Rule 26(e) is grounds for excluding evidence); *Hancock,* 967 F.2d at 468 (same); *Berger v. Rossingnol Ski Co., Inc.,* No. C 05–02523 CRB, 2006 WL 1095914, *6 (N.D.Cal. Apr. 25, 2006) (granting summary judgment of noninfringement, where the court denied plaintiffs' motion to amend its preliminary infringement contentions, and the accused device did not read on at least one limitation of the claim under the original contentions), aff'd, 214 Fed.Appx. 981 (Fed.Cir. 2007) (Unpub. Disp.), cert. denied, 552 U.S. 940, 128 S.Ct. 48, 169 L.Ed.2d 242 (2007). Cf. *Genentech, Inc. v. Amgen, Inc.,* 289 F.3d 761, 773–74 (Fed.Cir.2002) (affirming the district court's decision to preclude plaintiff from proceeding with an infringement claim under the doctrine of equivalents, based on plaintiff's failure to include that theory in its claim chart).

■ FVC also argues that the court should strike the portions of B–K's expert report discussing literal infringement of the first resistance means, because B–K failed to assert literal infringement of this element in its preliminary infringement contentions. In its October 9 order, the court directed B–K to identify whether it contended that each element of each asserted claim was infringed literally or under the doctrine of equivalents.[155] B–K stated in its preliminary contentions that "each of the limitations of each asserted claim is claimed to be literally present." [156] Its contentions concerning the first resis-

---

**152.** Mathiowetz MTS Decl., Exh. 2, at 8.

**153.** Mathiowetz MTS Decl., Exh. 4, at 10.

**154.** See Declaration of John D. Pratt, PH.D., P.E. in Support of B–K Lighting's Opposition to Fresno Valve's Motion for Summary Judgment Re Infringement, Docket No. 165 (Apr.

7, 2008), Exh. A, Corrected Infringement Analysis Report of John D. Pratt ("Pratt Infringement Report") at 97–98.

**155.** Disclosure Order at 2.

**156.** Plaintiff's Preliminary Contentions at 2.

tance means specifically invoked the doctrine of equivalents for the location of the tapered post and opening.[157] Viewed in combination, B–K adequately disclosed that it asserted the first resistance means was infringed both literally and under the doctrine of equivalents. The court declines, therefore, to strike the portions of B–K's expert report that discuss literal infringement of the first resistance means.[158]

### 2. Whether the Remaining Claims Are Literally Infringed

■ "To establish literal infringement, every limitation set forth in a claim must be found in an accused product, exactly." *Southwall Techs., Inc. v. Cardinal IG Co.,* 54 F.3d 1570, 1575 (Fed.Cir.1995). Thus, "[i]f any claim limitation is absent from the accused device, there is no literal infringement as a matter of law." *Amgen Inc. v. F. Hoffman–LA Roche, Ltd.,* 580 F.3d 1340, 1374 (Fed.Cir.2009). FVC contends that its lighting devices do not literally infringe the first resistance means described in the remaining claims.

FVC argues that its devices do not literally infringe the first resistance means because they do not include the limitations of "a tapered opening in the support member" and a "tapered post in the base member." FVC contends that its devices employ a tapered opening in the upper *base* member, and a tapered post in the lower *support* member. B–K does not dispute this.

■ B–K argues, however, that the reversed opening and taper are "equivalent structures" that perform the same function as the structures claimed in the '084 patent, so they literally infringe the first resistance element under § 112, ¶ 6. Under

§ 112, ¶ 6, a patent claim can be expressed in "means-plus-function" format: "as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof." 35 U.S.C. § 112, ¶ 6. In such a case, the claim "shall be construed to cover the corresponding structure, material, or acts described in the specification *and equivalents thereof.*" *Id.* (emphasis added). "Under § 112, ¶ 6, an accused device with structure not identical to the structure described in the patent will literally infringe the patent if the device performs the identical function required by the claim with a structure equivalent to that described in the patent." *Cybor Corp. v. FAS Techs., Inc.,* 138 F.3d 1448, 1457 (Fed.Cir.1998). A structure is equivalent to the corresponding structure described in the patent "only if it is insubstantially different[.]" *Ishida Co. v. Taylor,* 221 F.3d 1310, 1317 (Fed.Cir.2000).

Claims 3, 12, 18, 19, and 21 not only use the term "first resistance structure," but also identify that structure; they specify that the "first resistance means" "comprises a tapered opening in [the] support member and a tapered post in [the] base member, said tapered opening sized and configured to receive said tapered post and allow frictional pivoting of said tapered post therein." [159] Because these claims specifically disclose a structure that constitutes the "first resistance means," 35 U.S.C. § 112, ¶ 6 does not apply to them. *See Allen Eng'g Corp. v. Bartell Indus., Inc.,* 299 F.3d 1336, 1347 (Fed.Cir.2002) ("[E]ven if the claim element specifies a function, if it also recites sufficient structure or material for performing that function, § 112, ¶ 6 does not apply," citing *Rodime PLC v. Seagate Tech., Inc.,* 174 F.3d

---

**157.** *Id.* at 13.

**158.** See Pratt Infringement Report at 98.

**159.** '084 Patent at col. 6:61–67; *id.* at col. 9:14–17; *id.* at 11:51–55; *id.* at col. 12:32–36; *id.* at col. 13:22–26.

1294, 1302 (Fed.Cir.1999)); *Cole v. Kimberly–Clark Corp.*, 102 F.3d 524, 531 (Fed. Cir.1996) ("To invoke [§ 112, ¶ 6], the alleged means-plus-function claim element must not recite a definite structure which performs the described function"). B–K must therefore demonstrate that every limitation set forth in claims 3, 12, 18, 19, and 22 can be found in the accused products exactly as it is claimed. *Southwall Techs.*, 54 F.3d at 1575.

 B–K concedes that the "tapered opening" identified in its preliminary contentions is on the base member, and the post is on the support member—"the opposite of the embodiment disclosed in the '084 patent." [160] Because B–K admits that the post and opening in FVC's devices are the reverse of what is claimed in the '084 patent, it effectively concedes that the placement limitations specified in claims 3, 12, 18, 19 and 21 are be found in the accused product. The court concludes, consequently, that there is no literal infringement of the claims.

 Claims 15 and 22, however, claim the first resistance means in means-plus-function format because they do not disclose a specific structure associated with the first resistance means. Rather, they claim a "first resistance means for limiting free pivotal movement of said base member relative to said support member when said base member is not locked in place to said support member." [161] Because claims 15 and 22 are written in means-plus-function format, they may be construed to cover not only the specific structure described by the '084 patent, but also equivalents thereof. 35 U.S.C. § 112, ¶ 6. The FVC devices will literally infringe claims 15 and 22, therefore, if they include an equivalent of "a tapered opening in the

support member and a tapered post in the base member, with the tapered opening sized and configured to receive the tapered post and allow frictional pivoting of the tapered post in the tapered opening." [162]

Because the factors relevant to a finding of equivalence or non-equivalence under § 112, ¶ 6 are substantially similar to the factors considered when applying the "doctrine of equivalents," the court considers the two questions together below. *See Welker Bearing Co. v. PHD, Inc.*, 550 F.3d 1090, 1099 (Fed.Cir.2008) (the question of structural equivalents under § 112 ¶ 6 and the doctrine of equivalents are "closely related" "in the sense that both § 112 ¶ 6 and the doctrine of equivalents apply 'similar analyses of insubstantiality of the differences' between a disclosed structure and an accused infringing structure," citing *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303, 1309 (Fed.Cir.1998)); *Searfoss v. Pioneer Consol. Corp.*, 374 F.3d 1142, 1148 (Fed. Cir.2004) (the question whether an indirect connection was equivalent to a direct connection was the same "whether equivalency is judged under section 112(6) or under the doctrine of equivalents"); *Kemco Sales, Inc. v. Control Papers Co., Inc.*, 208 F.3d 1352, 1364 (Fed.Cir.2000) (noting that the analysis for determining whether an accused structure performs a claimed function in substantially the same way and achieves substantially the same result as the structure disclosed in the patent is "the same under both the section 112, paragraph 6 and [the] doctrine of equivalents tests").

### 3. Whether the Remaining Claims Are Infringed by Equivalents

 B–K argues that even if the reversed post/opening structures in the FVC devices do not literally infringe the '084

---

160. Infringement Opp. at 16.

161. '084 Patent at col. 7; *id.* at col. 13–14.

162. Claim Construction Order at 51 (emphasis added).

patent's first resistance means, they are equivalent and therefore infringing under the doctrine of equivalents ("DOE"). "A device that does not literally infringe a claim may nonetheless infringe under the doctrine of equivalents if every element in the claim is literally or equivalently present in the accused device." *Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1423 (Fed.Cir.1997). As noted, B–K also argues that the reversed post/opening structures in the accused devices are "equivalent structures" that literally infringe the first resistance means set forth in claims 15 and 22 under § 112, ¶ 6.

 Where the evidence is such that no reasonable jury could determine that two elements are equivalent, district courts are obliged to grant partial or complete summary judgment for the accused party. *Warner–Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 39 n. 8, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997) (citing Fed.R.Civ.Proc. 56; *Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548). "The court must also determine the various legal limitations on the application of the doctrine of equivalents on a motion for summary judgment." *Id.* "Thus, under the particular facts of a case, if prosecution history estoppel would apply or if a theory of equivalence would entirely vitiate a particular claim element, partial or complete judgment should be rendered by the court, as there would be no further material issue for the jury to resolve." *Id.*

 FVC argues that the "specific exclusion" corollary to the "all limitations rule" precludes a finding of equivalency in this case. The "specific exclusion" rule

provides that when "the scope of the claim [i]s limited in a way that plainly and necessarily exclude[s] a structural feature that [i]s the opposite of the one recited in the claim, that different structure c[an] not be brought within the scope of patent protection through the doctrine of equivalents." *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1346 (Fed.Cir.2001) (citing *Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1425 (Fed.Cir.1997)). "In other words, in a binary choice situation where there are only two structural options, the patentee's claiming of one structural option implicitly and necessarily precludes the capture of the other structural option through the doctrine of equivalents." *Senior Techs., Inc. v. R.F. Techs., Inc.*, 76 Fed.Appx. 318, 321 (Fed.Cir.2003) (Unpub. Disp.); see also *Dolly, Inc. v. Spalding & Evenflo Cos., Inc.*, 16 F.3d 394, 400 (Fed.Cir.1994) ("equivalency cannot embrace a structure that is specifically excluded from the scope of the claims"). Otherwise, a finding of equivalency would wholly vitiate a claim limitation. *SciMed*, 242 F.3d at 1347. Relying on this body of law, FVC contends that the structural specifications set forth in the patent are binary in nature; it asserts that the patent specifically describes a "tapered post *in [the] support member*," [163] and "the tapered opening is either in the support member or it is not." [164] FVC argues that B–K's theory of equivalence "vitiates" the specific placement requirements set forth in the patent: that the tapered post be "in [the] support member," and the tapered post extend outward from the base member.[165]

---

**163.** *See* e.g., '084 patent at col. 6:61–67; *id.* at 5 (describing a "tapered post ... sized and configured to fit within a tapered opening *in the support side*.").

**164.** Infringement MSJ at 18.

**165.** See, e.g., '084 patent at col. 6:61–67 ("first resistance means comprises a tapered opening in said support member and a tapered post in said base member"); *id.* at 5 ("a tapered post *on the base side* is sized and configured to fit within a tapered post *in the support side*"); *id.* at 6 ("the preferred embodiment of the present invention includes

Citing *Corning Glass Works v. Sumitomo Elec. USA,* 868 F.2d 1251 (Fed.Cir. 1989), B–K counters that courts have long recognized that switching the location of two parts is an insubstantial change that does not avoid infringement by equivalents. In *Corning Glass,*

> "the inventions related to optical fibers which transmit light for optical communications. The optical fiber, according to the claims, feature[d] a core with a positive dopant in excess of that in the cladding layer around the core. Thus, the core's index of refraction [wa]s greater than that of the cladding layer.... The accused fibers contained no dopant in the core. Th[o]se fibers, instead, contained a negative dopant in the cladding layer. The refractive index of the core remained different from that of the cladding layer to channel the light signals. [The Federal Circuit] upheld the district court's determination that the addition of a negative dopant to the cladding layer was the equivalent of the addition of a positive dopant to the core." *Dolly,* 16 F.3d at 399.

*Corning Glass* does not support B–K's argument. As the Federal Circuit clearly stated in *DeMarini Sports, Inc. v. Worth, Inc., "Corning Glass* does not authorize rearrangement of structural claim limitations." 239 F.3d 1314, 1333 (Fed.Cir. 2001). The *DeMarini* court rejected the characterization of *Corning Glass* as "a reversal of parts case involving the reciprocal change of coacting elements," stating: "We disagree that the reciprocal

change was a reversal of structure" and emphasizing that in *Corning Glass,* "no structural claim limitations were rearranged[.]" *Id.; see also Dolly,* 16 F.3d at 400 ("In *Corning Glass,* the accused device retained both a core and cladding layer and the relationship of their respective refractive indices").[166] Because this case involves a structural rearrangement, it is more like *DeMarini* than *Corning Glass.*[167]

The Federal Circuit has held that a patent that "claims a precise arrangement of structural elements that cooperate in a particular way to achieve a certain result" is not infringed by an accused product that achieves the same result "by a different arrangement of elements." *Sage Prods., Inc. v. Devon Indus., Inc.,* 126 F.3d 1420, 1425 (Fed.Cir.1997). In *Sage,* the Federal Circuit held that a patent for a container used for safe disposal of medical instruments, which claimed an elongated slot on the top of the container body, was not literally infringed by an accused device that had an elongated slot within the container body. *Id.* at 1423. Focusing on the fact that the patent claimed "an elongated slot *at the top of the container body," id.* at 1422, the court noted that the slot on the accused device was "not 'at the top of the container body.'" *Id.* at 1423. It stated: "If Sage desired broad patent protection for any container that performed a function similar to its claimed container, it could have sought claims with fewer structural encumbrances." *Id.* at 1425. Because Sage had not done so, the court reasoned,

---

support member with a tapered opening in support side which abuts against base side on base member. Extending outward from base side is a tapered post that is sized and configured to tightly fit inside tapered opening").

insert, even though plaintiff argued that the interaction between the shell and the frame produced the same effect as the interaction between the frame and the insert. *Id.* at 1333.

**166.** In *DeMarini,* the court held that a double-walled aluminum baseball bat that featured an exterior shell over a bat frame was not the equivalent of a bat frame with an interior

**167.** *See* Invalidity Reply at 12 (arguing that *Corning Glass* is inapposite because in that case the claim language did not specify the location of the exchanged dopants).

it could not expand the scope of its patent to encompass products employing different a structural arrangement than that claimed by arguing that the accused structures were equivalents. *Id.* see also *Ethicon Endo–Surgery, Inc. v. U.S. Surgical Corp.*, 149 F.3d 1309, 1313 (Fed.Cir.1998) (affirming summary judgment of no infringement by equivalents where a patent claim tied "the location of the lockout mechanism" of the patented stapler to a specific location on the device (in the staple cartridge), while the location of the "lockout" on the accused product was the stapler cartridge).

Here, similarly, the '084 patent specifies a structural arrangement in which the tapered opening is in the support member, and the tapered post is on the base member.[168] It thus claims a "precise arrangement of structural elements," precluding B–K from arguing that the reversed structural arrangement found in the accused products is equivalent to the structure described in the patent.[169] *Id.* Like the patentee in *Sage*, B–K could have sought claims with fewer structural limitations had it desired broad patent protection for any "first resistance means" comprised of a tapered post rotating within a tapered opening. It cannot now expand the scope of its patent to encompass structural arrangements the patent claims disclaim by arguing infringement by equivalents under § 112, ¶ 6 and/or under the doctrine of equivalents. *See Sage*, 126 F.3d at 1425; see also *Johnson Elec. Indus. Mfg., Ltd. v. Ametek, Inc.*, 850 F.Supp.2d 342, 350 (D.Conn.2006) (holding, where a patent claimed vanes that served to establish a

**168.** FVC notes that, unlike the other claims in dispute, claims 15 and 22 do not specify a structural arrangement. When considering whether a product infringes a claim written in means-plus-function format, the court must determine structural equivalents under § 112 ¶ 6 by looking to "the disclosure of the invention in the specification, *as a whole.*" *J & M Corp. v. Harley–Davidson, Inc.*, 269 F.3d 1360, 1367 (Fed.Cir.2001) (emphasis added); see also *Budde v. Harley–Davidson, Inc.*, 250 F.3d 1369, 1379–80 (Fed.Cir.2001) ("The specification must be read as a whole to determine the structure capable of performing the claimed function.... In construing terms used in patent claims, it is necessary to consider the specification as a whole, and to read all portions of the written description, if possible, in a manner that renders the patent internally consistent"). Here, the specification, as a whole, claims a precise arrangement of structural elements that precludes a finding of § 112, ¶ 6 equivalency. As B–K argued at the hearing, moreover, a claim term should be interpreted consistently throughout a patent. *See Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc.*, 389 F.3d 1370, 1376 (Fed.Cir.2004) ("If possible, this court construes claim terms 'in a manner that renders the patent internally consistent,'" quoting *Budde*, 250 F.3d at 1380); *Fin Control Sys. Pty, Ltd. v. OAM, Inc.*, 265 F.3d 1311, 1318 (Fed.Cir.2001) ("the same terms appearing in different portions of the claims should be given the same meaning unless it is clear from the specification and prosecution history that the terms have different meanings at different portions of the claims"). The court therefore considers both the structure specified in the specification and the structural arrangement specified in other claims using the term "first resistance means" in determining whether the accused products infringe claims 15 and 22 under § 112, ¶ 6. *See Frank's Casing Crew & Rental Tools, Inc.*, 389 F.3d at 1377–79 (affirming summary judgment of noninfringement of three patent claims under § 112, ¶ 6, *inter alia*, because the mechanism specified in other claims using the same term as the means-plus-function claims and the accused structure "represent[ed] distinct structural approaches to performing essentially the same function").

**169.** The court stated in its claim construction order that "[t]he relative locations of the post and opening directly affect how the post and opening function to limit the pivotal movement of the base member vis-á-vis the support member. Specifying those locations, therefore, is part of the structure necessary to perform the claimed function." (Claim Construction Order at 49.)

chamber receiving a fan, and the fan of the accused product rested on top of a chamber formed by vanes, that "a finding of infringement would run afoul of the concept that equivalency cannot embrace a structure that is specifically excluded from the scope of the claims," and that "a finding of equivalent infringement [was] foreclosed as a matter of law," citing *Dolly*, 16 F.3d at 400).

The prosecution history of the '084 patent supports this conclusion.[170] FVC has adduced evidence showing that during prosecution of the '084 patent (a reissue of U.S. Patent No. 6,161,948 ("'948 patent"), in response to an "office action" by the PTO, B–K submitted amendments to its reissue application that narrowed its claims to define "first resistance means" as "comprise[d] [of] a tapered opening in said support member and a tapered post in said base member, said tapered opening sized and configured to receive said tapered post and allow frictional pivoting of said tapered post therein."[171] The parent '948 patent had simply claimed a "first resistance means for limiting free pivotal movement of said base member relative to said support member," without reciting a definite structure for achieving that function.[172] B–K does not dispute the authenticity of this evidence.[173]

Given this, FVC contends that B–K is precluded by the doctrine of prosecution history estoppel ("PHE") from relying on the DOE to assert that its devices infringe the first resistance means described in the remaining claims. The doctrine of PHE provides that "[w]here the original [patent] application once embraced the purported equivalent but the patentee narrowed his claims to obtain the patent or to protect its validity," the patentee cannot later assert that the "surrendered territory" comprises

170. The Federal Circuit has stated that the extent of equivalents under § 112, ¶ 6 "must be interpreted in light of ... the prosecution history." *J & M Corp. v. Harley–Davidson, Inc.*, 269 F.3d 1360, 1367 (Fed.Cir.2001); see also *Cybor Corp.*, 138 F.3d at 1457 ("Prosecution history is relevant to the construction of a claim written in means-plus-function form," citing *United States v. Telectronics, Inc.*, 857 F.2d 778, 782 (Fed.Cir.1988); *Rite–Hite Corp. v. Kelley Co.*, 819 F.2d 1120, 1123 (Fed.Cir. 1987)). The relevant inquiry is whether a competitor would reasonably believe that the applicant had surrendered the relevant subject matter. *Id.* (citing *Insituform Techs., Inc. v. Cat Contracting, Inc.*, 99 F.3d 1098, 1107–08 (Fed.Cir.1996)).

171. Mathiowetz Decl., Exh. 14 ("Response to Office Action").

172. *Id.*, Exh. 13 ("Amendment with Reissue Application"); see also *id.*, Exh. 12, United States Patent No. 61,161,948 (parent patent of the patent-in-suit).

173. B–K disputes that there was an "amendment" relating to the position of the tapered opening and the tapered post. (*See* Statement of Genuine Issues in Opposition to Fresno Valves & Casting, Inc.'s Motion for Summary Judgment Re Infringement, Docket No. 167 (Apr. 7, 2008), ¶ 33.) B–K does not adduce evidence disputing, however, that the parent '948 patent originally claimed a "first resistance means" in means-plus-function format, without reciting a definite structure associated with the element, or that 2004 amendments to the reissue application added specific structural limitations to the "first resistance means." *See Ortho–McNeil Pharmaceutical, Inc. v. Caraco Pharm. Labs., Ltd.*, 476 F.3d 1321, 1328–29 (Fed.Cir.2007) (where a patentee narrowed the language of a parent patent in a reissue application, it admitted that it had claimed more than it was entitled to claim in the parent patent and could not argue that the ratio "distinctly claimed" in the reissue patent was "broad enough to encompass, through the doctrine of equivalents, ratios outside of the confidence intervals expressly identified in the patent" because "to do so would eviscerate the limitation"). B–K not only narrowed the claims of the '948 patent by filing a reissue application, but amended the claims of the reissue application in response to an office action by the patent examiner. The court thus concludes that the doctrine of PHE applies.

subject matter that should be deemed equivalent to the literal claims of the issued patent. *Festo Corp. v. Shoketsu KKK Co.*, 535 U.S. 722, 733, 122 S.Ct. 1831, 152 L.Ed.2d 944 (2002). It is well-established that PHE applies where claims have been amended to avoid the prior art. *Id.* at 735, 122 S.Ct. 1831.

Amendment of a patent application is not an absolute bar to subsequent claims of infringement under the DOE, however. *Id.* at 737, 122 S.Ct. 1831. Instead, it establishes a presumption that the surrendered territory cannot be claimed under the DOE, shifting the burden to the patentee to show that the amendment does not surrender the particular equivalent in question. *Id.* at 740, 122 S.Ct. 1831. To make such a showing, the patentee must demonstrate that at the time of the amendment one skilled in the art could not reasonably be expected to have drafted a claim that would have literally encompassed the alleged equivalent. *Id.*

The evidence adduced by FVC establishes that the original patent embraced the purported equivalent of a tapered opening in the base member and a tapered post in the support member, given that it claimed the first resistance means in means-plus-function format. It also establishes, however, that B–K surrendered that broad claiming in prosecuting the reissue application by amending its claims to recite a specific structure comprising the first resistance means.

FVC has also adduced evidence that B–K sought the amendment to avoid prior art. Hagen submitted a declaration to the patent office stating that the application

for a reissue patent had been filed because the applicant might originally have claimed too much in light of the Coronado 720 reference, of which it was not aware during prosecution of the original patent.[174] FVC's evidence suffices to establish that B–K narrowed the claims of the '084 patent to avoid prior art, and shift the burden to B–K to demonstrate that it did not seek to narrow the patent claims for a reason that would give rise to an estoppel. As B–K has adduced no evidence that it sought amendment for reasons unrelated to the patentability or validity of the remaining claims, there is a presumption that PHE applies to bar application of the DOE here.

Consequently, B–K must adduce evidence that, at the time of the reissue application, one skilled in the art could not reasonably have been expected to have drafted a claim that would have literally encompassed the use of a tapered opening in the base member combined with a tapered post in the support member. B–K adduces no evidence that this is true. In fact, its opposition to the motion for summary judgment on infringement does not address FVC's PHE argument. B–K has thus failed to meet its burden of rebutting the presumption that PHE applies and that the equivalents at issue have been surrendered. As a result, it has failed to raise triable issues of fact as to whether the accused devices infringe the first resistance means claimed in the remaining claims under the DOE. *Festo*, 535 U.S. at 740, 122 S.Ct. 1831.

For substantially the same reasons, a finding of equivalence under § 112, ¶ 6 is precluded by the prosecution history of the '084 patent.[175] *See Ballard Med. Prods. v.*

---

174. Response to Office Action at 27–29; Mathiowetz Decl., Exh. 15 ("Reissue Application Declaration by the Inventor").

175. At the hearing, B–K asserted that PHE does not apply to claims 15 and 22 because the term "first resistance means" in those claims was never amended. As noted, however-

er, B–K has not adduced facts controverting FVC's evidence that it amended other claims to recite a specific structure comprising the "first resistance means." "Prosecution history estoppel ... is not limited to the claims with respect to which an applicant's statements were made." *American Permahedge, Inc. v. Barcana, Inc.*, 105 F.3d 1441, 1446

*Allegiance Healthcare Corp.*, 268 F.3d 1352, 1359 (Fed.Cir.2001) (" '[J]ust as prosecution history estoppel may act to estop an equivalence argument under the doctrine of equivalents, positions taken before the PTO may bar an inconsistent position on claim construction under § 112, ¶ 6,' " quoting *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1457 (Fed.Cir.1998) (quoting *Alpex Computer Corp. v. Nintendo Co.*, 102 F.3d 1214, 1221 (Fed.Cir.1996))); *Wenger Mfg., Inc. v. Coating Machinery Systems, Inc.*, 239 F.3d 1225, 1238–39 (Fed.Cir.2001) (quoting *Cybor*); *Desper Products, Inc. v. QSound Labs, Inc.*, 157 F.3d 1325, 1337 (Fed.Cir.1998) (quoting *Alpex Computer*).

For the reasons stated, the court concludes that the rearranged structures in the accused products do not literally infringe claims 15 and 22 under § 112, ¶ 6 "in light of the disclosure of the invention in the specification, as a whole, as well as the prosecution history." *J & M Corp.*, 269 F.3d at 1368 ("The literal scope of a properly construed means-plus-function limitation does not extend to all means for performing a certain function. Rather, the scope of such claim language is sharply limited to the structure disclosed in the

specification and its equivalents. Moreover, the extent of equivalents must be interpreted in light of the disclosure of the invention in the specification, as a whole, as well as the prosecution history"); see also *Kristar Enters., Inc. v. Revel Envtl. Mktg., Inc.*, No. C 98–3094 CRB, 1998 WL 886623, *4–5 (N.D.Cal. Dec. 16, 1998) ("[I]t is at least arguable that the ... patent sets forth a 'precise arrangement of structural elements' which [defendant's product] now deviates from—indeed, the prosecution history for the ... patent suggests that the Patent Office may have required this degree of specificity from plaintiff in order to distinguish its invention from prior art.... [T]he Court finds that significant doubt exists as to whether the [product] ... infringes the ... patent in light of the *Sage Products* decision. Therefore ..., the need for a preliminary injunction against this defendant is obviated"). The court concludes, moreover, that the "all limitations rule" and prosecution history estoppel bar a finding that FVC's devices infringe the remaining claims under the DOE. Because B–K has failed to show that the remaining claims infringe the first resistance means either literally or under the DOE, the court grants FVC's motion for summary judgment of non-infringement.[176]

---

(Fed.Cir.1997). Similarly, B–K's surrender of a broader definition of "first resistance means" by the recital of a specific structure comprising that element in the reissue application is not limited to the claims in which it recited the structure. As the Federal Circuit stated, "it is well-settled that identical claim terms used in different claims must be interpreted consistently." *Id.* "Similarly, under the doctrine of equivalents," the circuit court has held that there is "no reason to assign different ranges of equivalents for the identical term used in different claims in the same patent, absent an unmistakable indication to the contrary." *Id.* The court may therefore consider the amendment of other claims claiming a first resistance means to determine that PHE supports a finding of non-infringement under § 112, ¶ 6 of claims 15 and 22.

**176.** For the reasons stated, the court strikes B–K's evidence relating to infringement theories it failed to disclose in its answers to contention interrogatories and preliminary infringement contentions, as required by the court's October 9, 2007 order, and and grants summary judgment of non-infringement in favor of FVC with respect to the undisclosed infringement contentions on that basis. Even if the court were to entertain B–K's new infringement theories, however, it would likely grant summary judgment in FVC's favor. The court is skeptical that a reasonable jury could decide that the inner surface of the protruding circular ridge in the accused devices constitutes an "opening" according to the common understanding of that word. The tapered ridge surface does not create a "gap, hole, or passage"; it is simply a ridge that abuts an opening that is not tapered.

## IV. CONCLUSION

The court grants B–K's motion for summary judgment on the defenses of anticipation, best mode, false inventorship, and inequitable conduct. It denies the balance of the parties' motions for summary judgment on the validity of the remaining claims. The court grants FVC's motion for summary judgment of non-infringement of the remaining claims.

### JUDGMENT FOR DEFENDANT

On March 11, 2013, the court issued an order addressing the parties' cross-motions for summary judgment. The court granted defendants' motion for summary judgment of noninfringement. Accordingly,

IT IS ORDERED AND ADJUDGED

1. That plaintiff takes nothing by way of its complaint; and

2. That the action be, and it hereby is, dismissed.

(*See* Reply in Support of Motion for Summary Judgment as to No Infringement, Docket No. 183 (Apr. 14, 2008) at 10; Yang Decl., Exh. 6 (definition of "opening" from Webster's Ninth New Collegiate Dictionary).) As FVC argues, it is an equally questionable proposition that a reasonable jury could find that the surface of the ridge is "*in* the support member," as claimed in the '084 patent, required by the court's claim construction order, and asserted in B–K's preliminary contentions. The figures on which both parties rely clearly show that the accused surface protrudes *from* the support member. (See Infringement Opp. at 15–16; Claim Construction Order at 30; Plaintiff's Preliminary Infringement Contentions at 13.) Other than stating, without explanation, that the ridge surface is an opening in the support member, Pratt's expert report does not establish that this is so. For the reasons stated in this order, however, the court need not decide whether Pratt's wholly conclusory statements are sufficient to create triable issues of fact for trial.